Donald Ray GRIFFIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 62792.

Court of Criminal Appeals of Texas,
Panel No. 1.

April 15, 1981.

Janet Seymour Morrow, Houston, court appointed on appeal, for appellant.

John B. Holmes, Jr., Dist. Atty. & Ray Elvin Speece, Asst. Dist. Atty., Houston, and Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and ROBERTS and ODOM, JJ.

## OPINION

ROBERTS, Judge.

A jury found the appellant guilty of aggravated robbery and assessed a punishment of 35 years' confinement. This appeal had been abated so that the indigent appellant could be given the assistance of counsel.

The State's evidence was that the appellant hired a taxicab, which had been called to a certain address in Houston. The appellant directed the driver on a rather long trip to Jacinto City, and then gave "[in]numerable" directions to turn onto various streets. As the driver noticed a police car, the appellant abruptly told him to turn onto a gravel street and to park behind a building. It was about midnight. As the driver was filling out a sheet on his clipboard the appellant took a revolver from the pocket of his trench coat, pointed it at the driver, cocked it, and told the driver to get out of the cab. The driver got out. The appellant came around the cab from the front seat and told the driver to run. The driver ran, and he ran faster when he heard a shot fired behind him. He looked back and saw the appellant driving away in the cab. About 15 minutes later, police officers found the appellant walking along a street about 6 miles from the scene of the robbery, and they arrested him. He was carrying the revolver, which had one spent shell under the hammer. The taxicab was found parked about a mile away. The record is not clear about directions, so we can deduce no more than that the taxicab had been driven 5 to 7 miles from the scene of the robbery. The keys were not in it, but the appellant's driver's license was. The State introduced the appellant's written statement:

"At about 11:30 P.M., Dec. 27, I got into a Yellow Cab at 5000 Richmond in Houston and told the driver I wanted to

go to 201 Carolina Street, I was giving him directions and we drive around for quite a while. At an unknown place I told the cab driver to stop the cab. I did not have any money to pay the fare, so I pulled a pistol from my jacket and told the cab driver to get out of the cab. We both got out and I walked around and I told him to start running. He started running away from the cab and I got into it and fired a shot into the air. I started driving away and later I left the cab on a street near an intersection and started walking away. I walked about five blocks and saw a police car. I walked a little further and a police officer stopped me. They put handcuffs on me and took me to the police station."

The appellant's testimony was that he wanted to visit his 2½ year old son at his in-laws' house in Galena Park (which is adjacent to Jacinto City). About 10:30 p.m. he hailed a taxicab in Houston; later in his testimony the appellant revised this time to 9:00 or 9:30. He gave an address and told the driver how to get there. After correctly driving to the penultimate street, the driver missed the last turn-off. He drove on some short, residential streets, trying without success to find his way back. The appellant was not giving directions; he was lost. The driver stopped the cab; he was not directed to turn behind a building or anything of that nature. The driver asked to be paid the fare of about $12.60. The appellant said he had only about $10, and asked if he could arrange to pay the rest the next day. The driver became angry, cursed, demanded payment, and told the appellant to get out. The driver reached under the seat and got "some type of arms." The appellant became frightened. He pulled his pistol from his pocket. The pistol was in the coat pocket fortuitously, the appellant having left it there a couple of weeks earlier. He had bought it a couple of weeks earlier, to hunt squirrel and

rabbit. He had not worn the coat or carried the pistol since then. He first realized he had the pistol while he was riding in the cab. Again the appellant asked to make arrangements to pay; again the driver cursed, and "he held something in his hand." Both men got out of the cab without further conversation, and both walked or ran away. The appellant did not fire the gun. The appellant went back to the cab, got in, and drove it off. Surprisingly, neither counsel elicited a reason for the appellant's having done this, but the appellant denied having had an intent to steal the cab. He drove 6 or 8 blocks, parked the cab, left the keys in it, and started walking; still lost, he was "trying to get back downtown, headed toward the bus terminal." He walked 5 or 6 blocks. He had the pistol when he was arrested. He could not explain how the shell came to be fired. He signed the written statement because police officers had beaten him severely.

In rebuttal the State called the appellant's mother-in-law. She testified that she was living at the address the appellant said he had given the driver. The appellant had not called her house. On the previous day he had come to her place of work, wearing a trench coat; he called to her and pulled out a shiny pistol.

█ The first ground of error is that the evidence was insufficient to prove one of the elements of robbery. The indictment alleged that the robbery was committed "in the course of committing theft of taxicab." This was an allegation of one of the elements of robbery: "A person commits an offense if, *in the course of committing theft* as defined in Chapter 31 of this code ...," etc. V.T.C.A. Penal Code, Section 29.02(a). While the indictment need not allege separately the elements of theft, "the proof will involve proving up a theft or attempted theft ...." *Earl v. State*, 514 S.W.2d 273, 274 (Tex.Cr.App.1974).[1]

---

1. Because the definition of "in the course of committing theft" includes conduct that occurs in an attempt to commit theft or in immediate flight after the attempt of theft, proof of a completed taking is not required by the present

Penal Code. *Watson v. State*, 532 S.W.2d 619 (Tex.Cr.App.1976). This does not affect the requirement that intent to deprive be proved. See *Earl v. State*, supra.

■ One of the elements of theft, which must be proved in a robbery prosecution, is "intent to deprive the owner of property." V.T.C.A. Penal Code, Section 31.03(a). The former penal code required, in robbery and theft cases, proof that the defendant intended to appropriate the property permanently. 2 *Texas Annotated Penal Statutes* 400 (Branch's 3d ed. 1974). The present definition of "deprive" includes the withholding of property from the owner not only "permanently," but also "for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner ...." V.T.C.A. Penal Code, Section 31.01(3)(A).[2] The statutory level of harm to ownership rights has been lowered to include prolonged withholdings as well as permanent ones, yet the law under the present Penal Code continues to be that a theft conviction cannot be obtained on proof that the defendant intended only a temporary withholding of the property. Searcy & Patterson, "Practice Commentary," 3 *Vernon's Texas Codes Annotated—Penal Code* 415 (1974); State Bar Committee on Revision of the Penal Code, *Texas Penal Code: A Proposed Revision* 214 (Final Draft 1970). *See* 2 *Texas Annotated Penal Statutes* 400 (Branch's 3d ed. 1974). The only change made by the present Penal Code is that the concept of temporary withholding has been reduced, from anything less than permanent, to something shorter than "for so extended a period of time that

a major portion of the value or enjoyment of the property is lost to the owner."

■ The defense of temporary use was recognized long ago, as was the defendant's entitlement (when the evidence raises the issue) to an affirmative instruction that a reasonable doubt as to whether he intended such a temporary use calls for acquittal of theft charges.[3] See *Blackburn v. State*, 44 Tex. 457, 463–464 (1876); 3 *Texas Annotated Penal Statutes* 434–435 (Branch's 3d ed. 1974). This defense is equally available in cases of robbery, which require proof of theft or attempted theft. *Galloway v. State*, 126 Tex.Crim. 294, 71 S.W.2d 871 (1934).

■ The appellant did not request an instruction on temporary use, so he can not (and does not) complain on appeal that it was error to have omitted such an instruction. His argument is that the evidence was insufficient to prove intent to deprive the owner of the taxicab, and that it shows, at most, unauthorized use of vehicle.[4]

■ The question of sufficiency of evidence to sustain a state criminal conviction implicates the Fourteenth Amendment. *Jackson v. Virginia*, 443 U.S. 307, 319 n. 12, 99 S.Ct. 2781, 2789 n. 12, 61 L.Ed.2d 560 (1979), "announced ... the constitutional minimum required to enforce the due process right" to be free from conviction except on proof beyond a reasonable doubt. The court said (443 U.S. at 318–319, 99 S.Ct. at 2789) (footnotes omitted):

---

2. The definition of "deprive" also includes "(B) to restore property only upon payment of reward or other compensation; or (C) to dispose of property in a manner that makes recovery of the property by the owner unlikely." Our disposition of this case makes it unnecessary to consider whether the evidence was sufficient to have proved an intent to deprive under (C).

3. The following charge was held to be sufficient in *Benitez v. State*, 377 S.W.2d 651, 653–654 (Tex.Cr.App.1964):

"Testimony has been offered by the defendant to the effect that there was a mere temporary taking and use of the automobile in question and there was no intent to deprive the owner of ... the same, and if you so believe or have a reasonable doubt thereof, you will find the defendant 'Not Guilty.'"

4. We also note that the appellant did not request an instruction on the lesser, included offense of unauthorized use of vehicle. That offense is a lesser, included offense of theft. *Neely v. State*, 571 S.W.2d 926 (Tex.Cr.App. 1978). Theft, in turn, can be a lesser, included offense of aggravated robbery. *Campbell v. State*, 571 S.W.2d 161 (Tex.Cr.App.1978). Therefore unauthorized use of vehicle can be a lesser, included offense of aggravated robbery. The necessity of such a charge must be determined on a case-by-case basis, depending on the proof. *See Eldred v. State*, 578 S.W.2d 721 (Tex.Cr.App.1979). Here the appellant admitted operating the vehicle without consent; he denied any intent to deprive the owner, which is an essential element of robbery and theft. This evidence would raise the issue of the lesser, included offense of unauthorized use of vehicle.

"[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' *Woodby v. INS*, 385 U.S. [276,] at 282[, 87 S.Ct. 483, at 486, 17 L.Ed.2d 362] (emphasis added). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Johnson v. Louisiana*, 406 U.S. [356,] at 362[, 92 S.Ct. 1620, at 1624, 32 L.Ed.2d 152.] This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law."

Although *Jackson* was setting a standard for review of state convictions by federal courts, the due process requirements that it announced were based expressly on the Fourteenth Amendment. They are binding on the states and constitute a minimum standard for our sustaining a conviction.[5] "Under [*In re*] *Winship*, [397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970),] which established proof beyond a reasonable doubt as an essential of Fourteenth Amendment due process, it follows that when such a conviction [that was obtained even when no rational trier of fact could have found guilt beyond a reasonable doubt] occurs in a state trial, it cannot constitutionally stand." 443 U.S. at 317–318, 99 S.Ct. at 2788–2789. "[S]tate appellate review undoubtedly will serve in the vast majority of cases to vindicate the due process protection that follows from *Winship* . . . ." 443 U.S. at 322, 99 S.Ct. at 2791.

 Applying this standard to the case before us, we hold that the evidence of intent to deprive was sufficient to support the conviction. Intent to deprive must be determined from the words and acts of the accused. *Banks v. State*, 471 S.W.2d 811 (Tex.Cr.App.1971).[6] The appellant's argument is that his driving the taxicab only a few miles and leaving it parked on a street while he walked a mile away from it, means that no rational finder of fact could have believed beyond a reasonable doubt that he had an intent to deprive the owner when he took the cab. It must be remembered that the element which must be proved is not a deprivation, but the defendant's *intent* to deprive at the time of the taking. The fact that the deprivation later became temporary does not automatically mean that there was no *intent* to deprive permanently or for so long as to satisfy the statutory definition. *Draper v. State*, 539 S.W.2d 61, 68 (Tex.Cr.App.1976).

---

5. Of course states are free to set higher standards of review. For example, this court requires that juries be instructed not to convict on circumstantial evidence unless it excludes every reasonable hypothesis other than guilt, although the federal constitution does not require a different treatment of circumstantial evidence. *See Richardson v. State*, 600 S.W.2d 818, 826 (Tex.Cr.App.1980) (Dally, J., dissenting). This different treatment extends to appellate review as well. *Sewell v. State*, 578 S.W.2d 131, 135 (Tex.Cr.App.1979).

6. Banks accosted a woman as she was getting into her car. He pushed her into the car, struck her, threatened her, took her keys, started the car, and began to back out of the parking space. The woman jumped from the car and ran away. She looked back and saw that the car was still running and the backup lights were on. She then saw Banks run away from the car. The court held the evidence was sufficient to prove intent to steal as well as a taking.

Cases in which we have found the evidence insufficient as a matter of law to prove intent to deprive have shown much more clearly that only a temporary use was intended. In *Clark v. State*, 134 Tex.Crim. 427, 115 S.W.2d 953 (1938), a taxicab passenger became angry, struck the driver, and threatened to kill him. The driver jumped from the moving cab and ran away. Four hours later the cab was found; it was parked in the same vicinity, and the key had not been removed. The court noted that when the driver abandoned the car, the appellant manifestly had to take temporary control of it or suffer a wreck. The evidence of intent to deprive permanently was insufficient. In *Kiser v. State*, 141 Tex. Crim. 530, 150 S.W.2d 257 (1941), a Ford automobile had been taken from a public square on a certain day. It was found alongside a road four or five days later. On the day the car was taken, the appellant was seen in the public square asking, without success, for a ride home. The appellant then got into a Ford car and drove it away. He lived in the same direction from town as the place where the car was found. The court held that this evidence was insufficient to prove intent to appropriate permanently.

There was no such evidence in this case. The appellant's acts were sufficient evidence from which a rational trier of fact could have inferred an intent to deprive as that term is defined in V.T.C.A. Penal Code, Section 31.01(3)(A). This is not to say that the issue was uncontested or that the appellant was not entitled to an instruction on it, had he requested one. Rather we hold that the evidence was such that a rational jury could have found for the State on the issue. The first ground of error is overruled.

In the second ground of error the appellant asks us to overrule *Davis v. State*, 499 S.W.2d 303 (Tex.Cr.App.1973), and to follow the opinion dissenting on rehearing. We shall not do so.

The third ground is based on the following cross-examination of the appellant's brother, who was called by the appellant at the punishment stage to testify that he would help the appellant find a job if the jury recommended probation.

"Q You have heard [the appellant's mother-in-law] say that she knows all the people he knows and that this defendant has got a bad reputation for being a peaceable law-abiding citizen; you heard that testimony?

"A Yes, I have.

"Q And you haven't contradicted that, have you, sir?

"A Well, you haven't asked me the question.

"Q Well, I am not allowed to.

"[DEFENSE COUNSEL]: Your Honor, I am going to have to object. That the jury knows.

"THE COURT: Sustain the objection.

"[DEFENSE COUNSEL]: And ask the—

"THE COURT: Disregard—Counsel has asked a question, Ladies and Gentlemen—

"[DEFENSE COUNSEL]: At this time we move for a mistrial.

"THE COURT: I will deny that motion."

We cannot agree with the appellant's argument that this colloquy was the same as asking improper "have-you-heard" questions for impeachment. These questions seem to have been based on a misunderstanding of law,[7] but a mistrial was not called for.

The judgment is affirmed.

---

7. Of course the law *does* allow a prosecutor to ask reputation questions. What it does not allow is impeachment by "have-you-heard" questions of a witness who did not testify about reputation on direct examination by the defendant. The prosecutor evidently thought that because he could not ask impeachment questions, he could not ask about reputation at all; his remark was incorrect.