cr4-548.collier 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00548-CR







Charles Alfred Collier, Appellant



v.



The State of Texas, Appellee







NO. 03-94-00549-CR







Charles Alfred Collier, a/k/a James Taylor, Jr., Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF DALLAS COUNTY, 282ND JUDICIAL DISTRICT


NOS. F94-02183-KS & F94-00412-HS, HONORABLE TOM PRICE, JUDGE PRESIDING







PER CURIAM


 Charles Alfred Collier was convicted after a bench trial of attempted sexual
assault and robbery. (1) After accepting Collier's plea of true to enhancement paragraphs, the
court assessed concurrent sentences of twenty years' imprisonment for robbery and twenty-six
years' imprisonment for attempted sexual assault. Collier challenges the sufficiency of the
evidence to support each conviction. We will affirm each judgment.



The Standard of Review


 In reviewing a legal-sufficiency challenge, we examine the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443
U.S. 307 (1979); Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991); Griffin v. State,
614 S.W.2d 155 (Tex. Crim. App. 1981). In a bench trial, the trial judge is the sole judge of
the credibility of witnesses and may accept or reject any part or all of a witness's testimony. 
Alexander v. State, 823 S.W.2d 754, 756 (Tex. App.--Austin 1992, no pet.). 

 The indictment in F94-02183-KS (03-94-548-CR here) charged that Collier



unlawfully, intentionally and knowingly while in the course of committing theft
and with intent to obtain and maintain control of the property of [the
complainant], the said property being current money of the United States of
America, without the effective consent of the said complainant and with intent
to deprive the said complainant of said property, did then and there knowingly
and intentionally cause bodily injury to the said complainant, by striking said
complainant with his hand.



The indictment in F94-00412-HS (03-94-549-CR here) charged that Collier



did unlawfully, knowingly and intentionally cause penetration of the sexual
organ of [the complainant], a person not the spouse of the defendant, without
the consent of the complainant by means of an object, to-wit: the sexual organ
of CHARLES ALFRED COLLIER.

The Evidence

 Collier and the complainant provided the bulk of the testimony at trial; a police
officer's brief testimony was the only exception.



The complainant's testimony

 The complainant was a runaway from a group home for troubled girls. She got
temporary jobs under an assumed name at the Industrial Labor Hall. Like many workers at the
Hall, she took her checks from the Hall through an alley to cash them at a liquor store.

 She was returning to the Hall from cashing her check when Collier confronted her. 
He hit her in the nose, knocking her down, and stood over her, demanding her money. He
retrieved it from her bra. He helped her up, but kept a grip around her neck. He was nervous
and sweating and kept repeating, "I didn't want to do this; I shouldn't have done it at all. I don't
know what to say; I don't know what I should do. Should I have to slice you up?" He later said,
"I don't want to have to kill you." He paced, maintaining his grip.

 He took her to a cave-like arrangement of trees, vines, and bushes. He told her
to get down and to take down her pants. She complied, but tried to relax him. He tried to have
sex with her, but his flaccid penis did not penetrate her vagina. He then bound, gagged,
blindfolded, and left her.

 She eventually escaped. She did not call the police because she feared being
returned to the girls' home and then to the juvenile center. She went to her boyfriend's home,
took a bath, and lay down.

 Later that day, she went to the hospital to get her nose examined. She refused a
rape examination because she "did not want to do anything" and because the hospital employees
said they would call the police. She used an assumed name. Though the court reporter repeatedly
understood her to say her assumed name was "Amanda Collins," in court the complainant spelled
the last name "Colion."

 A week after the attack, she was walking with some friends and saw Collier. He
started running away toward the Hall. They followed him without displaying weapons. Collier
jumped through a ticket window at the Hall shouting, "They're trying to get me; they're trying
to kill me; they're trying to sell drugs to me." When the police came to arrest him, the
complainant decided to press charges. She gave the police a fake name because she still feared
being returned to the girls' home.

 On cross examination she revealed that she had been a gang member and sniffed
paint. She had been removed from foster homes for insubordination. She ran away from the
Dallas home when she was denied a return to foster parents. Coincidentally, the day of these
incidents, she was emancipated by El Paso Child Protective Services. She then gave her real
name to police.

 Collier pointed up a discrepancy between her grand jury testimony, where she said
that the people at the Hall called the police in response to her statement that Collier had raped her,
and her trial testimony, where she said she waited until the police arrived to accuse him. 



The police officer's testimony

 The officer said that the initial call to the Hall was based on Collier's intoxication
and refusal to leave. She said that the complainant used the name "Collins," though she
understood there was some mixup regarding her name.



Collier's testimony

 Collier presented a markedly different version of the events that led to his dive
through the window of the Hall. He knew the complainant as a mule for a drug pusher, probably
her boyfriend. He agreed to sell crack for the complainant. He got a package of fifty rocks of
crack on the understanding that, for every ten he sold, he could smoke four. Instead, he sold
fifteen and smoked the rest with friends. Realizing the magnitude of his error and fearing for his
life, he laid low.

 A week later, he returned to the Hall. He saw the complainant and her group of
friends walking. When they spotted him, one of them pulled out a gun and he ran to the Hall. 
He repeatedly told the Hall security officers that the group was trying to kill him. Despite the
security officers' offer to let him leave, he demanded that they call the police. Though a
policeman did not believe the complainant's story, neither did he find a weapon on the group. 
The police took Collier to a detoxification center.

 Collier denied punching the complainant, stealing her money, and trying to have
sex with her. He said he would not rob someone from the area of the Hall because they would
not be likely to have money either. He felt that, had he not run when he did, the complainant's
group probably would have killed him. He said that crack kills his desire for women. He said
he could not think when he was on drugs, he just lived for the high.

 The defense closed after introducing two affidavits showing that the hospital had
no records of a visit by anyone named Colion or her real name.



The Analysis

 The evidence is legally sufficient to support the judgment. The standard of review
requires us to defer to the factfinder's resolution of credibility issues and conflicting testimony. 
The trial judge was well within his role to credit the testimony of the complainant over that of the
appellant. The complainant's testimony provided sufficient evidence as to each element of
robbery and attempted sexual assault as charged in the indictment.

 The supposed inconsistencies in the complainant's testimony do not undermine this
conclusion. Her varying assessments of how many times she had seen Collier before the offenses
can be explained by differences in wording between seeing him three times and talking to him
once. Any inconsistencies or discrepancies in chronology between her grand jury and trial court
testimony do not relate to the elements of the offense.

 Likewise, her activities at the hospital do not automatically discredit her. Her
intent to preserve her status as a runaway explains her decision not to prosecute, her concordant
refusal of a rape examination, and her use of a false name. Though the hospital had no record
of her visit under the name "Colion," they may have made the same error as the court reporter
and entered her name as "Collins"; there was no evidence regarding a visit to the hospital by
Amanda Collins.

 The court had many reasons to doubt the defendant's testimony, not the least of
which were his self-interest in avoiding prison and his history as a crack addict. 

 The court was free, as trier of fact, to find the victim more credible and to choose
to accept her testimony rather than that of the defendant.



Conclusion


 We will not overturn the court's choice on credibility. The complainant's
testimony provides sufficient evidence to support the convictions. We overrule Collier's sole
point of error. We affirm the judgments of the trial court.


Before Justices Powers, Kidd and B. A. Smith

Affirmed on Both Causes

Filed: August 23, 1995

Do Not Publish

1.   The statutes under which Collier was convicted have been amended. Sexual assault: 
Act of May 29, 1983, 68th Leg., R.S., ch. 977, § 3, 19 Tex. Gen. Laws 5311, 5312
amended by Act of May 27, 1991, 72d Leg., R.S., ch. 662, § 1, 1991 Tex. Gen. Laws 2412
(Tex. Penal Code Ann. § 22.011, since amended); robbery: Penal Code, 63d Leg., R.S., ch.
399, sec. 1, § 29.02, 1973 Tex. Gen. Laws 883, 926 (Tex. Penal Code Ann. § 29.02, since
amended).