TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00545-CR







Graham William Munn, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO. 46,333, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING







PER CURIAM


 A jury found appellant guilty of arson with bodily injury and assessed punishment at
imprisonment for twelve years. Tex. Penal Code Ann. § 28.02(a)(2)(A), (d) (West 1994). The judgment
also reflects the jury's finding that appellant used a deadly weapon in the commission of the offense.

 Carmen Goetz, Wendy Solis, and Ray Smith lived with appellant in his house in Killeen. 
On the morning of March 5, 1996, Goetz was awakened by appellant, who told her he was going to burn
the house and that she should leave. Goetz did not take appellant seriously until he brought a can of
gasoline into the living room and began to pour the liquid on the rug. Appellant told Goetz that he wanted
to kill Smith. Goetz ran to warn Solis and Smith, but they did not respond to her knocks on their bedroom
door. Goetz returned to the living room, where she saw appellant ignite the gasoline with a cigarette lighter. 
Goetz fled through the front door.

 Solis and Smith were awakened by Goetz, but by the time Solis opened their door flames
filled the hallway and living room. Smith broke the glass in the bedroom window and pushed out the
burglar bars, then he and Solis escaped through the window. Smith fled from the scene and did not testify
at trial.

 Killeen Fire Marshall Michael Turo arrived at the scene with the first firefighters. He found
Goetz and Solis sitting on the ground with neighbors. Turo testified, "I went over to them and observed
that they had cuts and burns and smoke inhalation. They were having somewhat of a problem breathing." 
Turo gave the women first aid until emergency medical technicians arrived. Goetz and Solis were taken
to a hospital, from which they were soon released.

 Appellant does not dispute the sufficiency of the evidence with regard to the arson, but he
contends the evidence does not support the finding that Solis suffered bodily injury. "Bodily injury" means
physical pain, illness, or any impairment of physical condition. Tex. Penal Code Ann. § 1.07(a)(8) (West
1994). While Solis did not testify that she suffered an injury, Turo testified that both Solis and Goetz were
coughing and "having somewhat of a problem breathing" as a result of smoke inhalation. From this
testimony, a rational jury could find beyond a reasonable doubt that Solis suffered an impairment of physical
condition. See Jackson v. Virginia, 443 U.S. 307 (1979); Geesa v. State, 820 S.W.2d 154 (Tex. Crim.
App. 1991); Griffin v. State, 614 S.W.2d 155 (Tex. Crim. App. 1981) (test for legal sufficiency of
evidence). Point of error two is overruled.

 Appellant also challenges the finding that he used "a deadly weapon, to-wit: fire," during
the commission of the offense. Appellant first contends that fire cannot be a deadly weapon because it is
not a tangible thing. A deadly weapon, however, can be anything that in the manner of its use or intended
use is capable of causing death or serious bodily injury. Tex. Penal Code Ann. § 1.07(a)(17)(B) (West
1994). Under this definition, a deadly weapon does not have to possess any particular trait or
characteristic other than its capacity to cause death or serious bodily injury. See Mixon v. State, 781
S.W.2d 345, 346-47 (Tex. App.--Houston [14th Dist.] 1989), aff'd, 804 S.W.2d 107 (Tex. Crim. App.
1991) (affirmative finding that deadly weapon was used may be made even if weapon is not identified). 
This Court has rejected the argument that a deadly weapon must be an "instrument." Stanul v. State, 870
S.W.2d 329, 334-35 (Tex. App.--Austin 1994, pet. ref'd).

 In Taylor v. State, 735 S.W.2d 930 (Tex. App.--Dallas 1987), aff'd, 786 S.W.2d 295,
322 (Tex. Crim. App. 1990), the defendant poured gasoline in a room occupied by her unconscious
husband and ignited it. The resulting fire killed her husband. The court held that, in the manner of its use
in that case, the fire was a deadly weapon. 735 S.W.2d at 948-49. This Court has twice cited this holding
with approval. Stanul, 870 S.W.2d at 335; Lozano v. State, 860 S.W.2d 152, 156 n.9 (Tex.
App.--Austin 1993, pet. ref'd). That fire cannot be felt or touched in the manner of a firearm or knife does
not mean that it cannot be employed as a deadly weapon.

 Appellant also contends the deadly weapon finding was improper because starting the fire
was an essential element of the arson offense. Appellant asserts that to justify an affirmative finding, the
deadly weapon must be used in furtherance of a separate and distinct offense. Appellant relies on the
holding in Narron v. State, 835 S.W.2d 642 (Tex. Crim. App. 1992) and Ex parte Petty, 833 S.W.2d
145 (Tex. Crim. App. 1992). In each of these cases, the defendant was convicted of unlawfully possessing
a deadly weapon and the trial court made an affirmative finding that a deadly weapon was used in the
commission of the offense. The Court of Criminal Appeals held that the possession of a deadly weapon
did not constitute its "use" during the commission of the possessory offense. The court wrote, "[I]n order
to `use' a deadly weapon for affirmative finding purposes, the weapon must be utilized to achieve . . . the
commission of a felony offense separate and distinct from `mere' possession." Petty, 833 S.W.2d at 145.

 In Tyra v. State, 897 S.W.2d 796 (Tex. Crim. App. 1995), the defendant was convicted
of what is now called intoxication manslaughter after he caused the death of a person by reason of his
operation of a motor vehicle while intoxicated. See Tex. Penal Code Ann. § 49.08 (West 1994). The jury
found that the defendant used a deadly weapon, his automobile, during the commission of the offense. 
Citing Narron and Petty, the defendant argued that the affirmative finding was impermissible because,
among other things, the use of an automobile as a deadly weapon was an inherent element of the offense. 
The court rejected that argument:


 Our opinions in Narron and Petty . . . do not stand for the proposition that the
phrase "used or exhibited a deadly weapon during commission of a felony offense"
necessarily means "used or exhibited a deadly weapon during commission of an offense
which does not otherwise require the use or exhibition of a deadly weapon."


. . .


The fact that involuntary manslaughter under former Penal Code section 19.05(a)(2) is a
felony offense which . . . always involves the use of a deadly weapon does not change the
meaning of these words. There is simply nothing in the phrase "used a deadly weapon" to
imply that it must always be used to commit an "associated offense."



Tyra, 897 S.W.2d at 798. That arson is an offense that always involves the use of fire does not mean that
fire cannot be used as a deadly weapon in the commission of the offense.

 Appellant poured gasoline on his living room floor and ignited it, knowing that Solis and
Smith were asleep in another room. Appellant said he intended to kill Smith. This evidence supports the
jury's finding that the fire was a deadly weapon in the manner of its use and intended use by appellant. 
Point of error three is overruled.

 Finally, appellant contends the district court erred by allowing him to be tried before the
jury in a leg iron or shackle. Before the jury panel was brought into the courtroom for voir dire, appellant's
counsel brought to the court's attention the fact that appellant was wearing "a leg iron here of some type
and I've asked them to take it off and they said that they no longer remove these kind of things." Counsel
asked the court to order the removal of the leg iron "for the purpose of this hearing," citing the prejudice
that would result if the jurors saw the device. The court overruled the motion, saying:


[T]he court notes that Mr. Munn is wearing jeans and that this brace is underneath his
jeans and does not show it. All it shows is a leather strap around the foot which may or
may not even be seen by the jury due to our setup of the courtroom this morning and the
fact that the defendant will be further away from the jury and in a different position than
usually in this courtroom, at a different table so I will not permit the removal of the leg
brace.



The leg brace was not mentioned again during the trial. No motion for new trial was filed.

 The record does not reflect whether appellant wore the leg brace throughout the trial or
only during voir dire. There is no showing that the brace was visible to or seen by any of the jurors. On
this record, any error with regard to the use of the leg brace was harmless. Long v. State, 823 S.W.2d
259, 283 (Tex. Crim. App. 1991). Point of error one is overruled.

 The judgment of conviction is affirmed.


Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Affirmed

Filed: January 9, 1997

Do Not Publish



"use" during the commission of the possessory offense. The court wrote, "[I]n order
to `use' a deadly weapon for affirmative finding purposes, the weapon must be utilized to achieve . . . the
commission of a felony offense separate and distinct from `mere' possession." Petty, 833 S.W.2d at 145.

 In Tyra v. State, 897 S.W.2d 796 (Tex. Crim. App. 1995), the defendant was convicted
of what is now called intoxication manslaughter after he caused the death of a person by reason of his
operation of a motor vehicle while intoxicated. See Tex. Penal Code Ann. § 49.08 (West 1994). The jury
found that the defendant used a deadly weapon, his automobile, during the commission of the offense. 
Citing Narron and Petty, the defendant argued that the affirmative finding was impermissible because,
among other things, the use of an automobile as a deadly weapon was an inherent element of the offense. 
The court rejected that argument:


 Our opinions in Narron and Petty . . . do not stand for the proposition that the
phrase "used or exhibited a deadly weapon during commission of a felony offense"
necessarily means "used or exhibited a deadly weapon during commission of an offense
which does not otherwise require the use or exhibition of a deadly weapon."


. . .


The fact that involuntary manslaughter under former Penal Code section 19.05(a)(2) is a
felony offense which . . . always involves the use of a deadly weapon does not change the
meaning of these words. There is simply nothing in the phrase "used a deadly weapon" to
imply that it must always be used to commit an "associated offense."



Tyra, 897 S.W.2d at 798. That arson is an offense that always involves the use of fire does not mean that
fire cannot be used as a deadly weapon in the commission of the offense.

 Appellant poured gasoline on his living room floor and ignited it, knowing that Solis and
Smith were asleep in another room. Appellant said he intended to kill Smith. This evidence supports the
jury's finding that the fire was a deadly weapon in the manner of its use and intended use by appellant. 
Point of error three is overruled.

 Finally, appellant contends the district court erred by allowing him to be tried before the
jury in a leg iron or shackle. Before the jury panel was brou