TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






ON REHEARING








NO. 03-99-00189-CR






Genise Batson Brittenum, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT


NO. 98-624-K26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING







Appellant's motion for rehearing is granted. The opinion and judgment dated May
25, 2000, are withdrawn.

A jury found appellant Genise Batson Brittenum guilty of intentionally causing
serious bodily injury to a child and assessed punishment at imprisonment for fifty years. See Tex.
Penal Code Ann. § 22.04(a)(1), (e) (West Supp. 2000). Appellant's court-appointed attorney filed
a brief concluding that the appeal is frivolous and without merit. The brief meets the requirements
of Anders v. California, 386 U.S. 738 (1967), by presenting a professional evaluation of the
record demonstrating why there are no arguable grounds to be advanced. See also Penson v.
Ohio, 488 U.S. 75 (1988); High v. State, 573 S.W.2d 807 (Tex. Crim. App. 1978); Currie v.
State, 516 S.W.2d 684 (Tex. Crim. App. 1974); Jackson v. State, 485 S.W.2d 553 (Tex. Crim.
App. 1972); Gainous v. State, 436 S.W.2d 137 (Tex. Crim. App. 1969). Appellant exercised her
right to examine the record and file a pro se brief.

In her first point of error, she urges that the district court erred by overruling her
motion to quash the indictment. The indictment contained two counts. Count one alleged that
appellant "intentionally or knowingly caused the death of Daeshon Brittenum, an individual under
six years of age, by shaking him with the defendant's hands or putting his head in a pillow, or a
combination of these acts." See Tex. Penal Code Ann. § 19.03(a)(8) (West 1994). Count two
alleged that appellant "intentionally or knowingly caused serious bodily injury to Daeshon
Brittenum, a child, by shaking him with the defendant's hands or putting his head in a pillow, or
a combination of these acts." See Tex. Penal Code Ann. § 22.04(a)(1) (West Supp. 2000). In
her motion to quash, appellant complained that count two was defective because it does not allege
that the victim was under fourteen years of age. See id. § 22.04(c)(1).

Appellant relies on the opinion in Lang v. State, 586 S.W.2d 532, 533 (Tex. Crim.
App. 1979). That opinion is not controlling for two reasons. First, at the time Lang was decided,
section 22.04(a) defined the offense as injury to "a child who is 14 years of age or younger." See
Penal Code, 63d Leg., R.S., ch. 399, § 1, sec. 22.04, 1973 Tex. Gen. Laws 883, 920. Section
22.04(a) now defines the offense in terms of injury to "a child." See Tex. Penal Code Ann.
§ 22.04(a). "Child" is defined elsewhere in the statute as a person fourteen or younger. See id.
§ 22.04(c)(1). An indictment that tracks the language of the penal statute is generally sufficient. 
See Beck v. State, 682 S.W.2d 550, 554 (Tex. Crim. App. 1985). If a term is defined by statute,
it need not be further clarified in the indictment. See Coleman v. State, 643 S.W.2d 124, 125
(Tex. Crim. App. 1982). Second, the first paragraph of the indictment, for capital murder of a
child, alleged that the child was "under six years of age." Because both counts of the indictment
arose from the same transaction and involved the same victim, the allegation of the victim's age
in count one was sufficient notice of the victim's age with respect to count two. See Ex parte
Butler, 884 S.W.2d 782, 784 (Tex. Crim. App. 1994). Point of error one is overruled.

Next, appellant contends the evidence is legally and factually insufficient to sustain
the jury's verdict. In determining the legal sufficiency of the evidence to support a criminal
conviction, the question is whether, after viewing all the evidence in the light most favorable to
the verdict, any rational trier of fact could have found the essential elements of the offense beyond
a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 324 (1979); Griffin v. State, 614
S.W.2d 155, 158-59 (Tex. Crim. App. 1981). When conducting a factual sufficiency review, the
evidence is not viewed in the light most favorable to the verdict. Instead, all the evidence is
considered equally, including the testimony of defense witnesses and the existence of alternative
hypotheses. See Orona v. State, 836 S.W.2d 319, 321 (Tex. App.--Austin 1992, no pet.). A
factual sufficiency review asks whether a neutral review of all the evidence, both for and against
the finding of guilt, demonstrates that the proof of guilt is so obviously weak or so greatly
outweighed by contrary proof as to undermine confidence in the jury's determination. See
Johnson v. State, No. 1915-98, slip op. at 18 (Tex. Crim. App. Feb. 9, 2000). A verdict may
be set aside for factual insufficiency only if a finding of guilt beyond a reasonable doubt is clearly
wrong and unjust. See Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); Stone v.
State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd as untimely filed).

Daeshon Brittenum was the five-month-old son of Shira Sledge and Jeremy
Brittenum. Shortly after Daeshon's birth, Jeremy married appellant. Daeshon lived with his
mother. Jeremy visited Daeshon regularly, but never kept him overnight.

Jeremy went to jail in May 1998. On June 5, appellant called Sledge and asked to
visit Daeshon. Sledge told appellant that Daeshon had a doctor's appointment and that appellant
was welcome to join them. The two women took Daeshon to the pediatrician's office. Sledge
told the doctor that Daeshon had been unusually fussy during the previous night and that she was
concerned. The doctor examined the child and determined that he was normal and healthy in all
respects. The doctor prescribed an ointment for diaper rash and an analgesic for teething pain.
Sledge had to go to work after the doctor's appointment and agreed to let appellant keep Daeshon
overnight.

Shortly after midnight on June 6, appellant brought Daeshon to the emergency
room of an Austin hospital. The child was dead. Because he saw no obvious marks on the body
and the child was reported to have been in good health, the doctor initially thought that Daeshon
was a victim of sudden infant death syndrome. The Travis County Medical Examiner testified
that tiny bleeding points were found on the surface of the heart and lungs during autopsy. He said
that this was a common finding in cases of sudden infant death, as well as in other types of
asphyxia. He further testified, however, that the brain was swollen, with subdural and
subarachnoid hemorrhaging. He also found extensive retinal bleeding. These findings are not
consistent with sudden infant death syndrome, but are instead symptoms of shaken baby
syndrome. The medical examiner concluded that Daeshon's death was a homicide resulting from
violent shaking.

Renata Prater worked with appellant. She testified that appellant showed her a
photograph of a baby appellant identified as Jeremy's child. "I said, 'Well, it's a cute baby,' and
she said 'No,' the baby wasn't cute, the baby was ugly, and that she didn't like the baby."

Mabel Howard was another of appellant's coworkers. Appellant occasionally
watched Howard's two daughters, Andrea and Angela. The two girls spent the evening of June
5, 1998, with appellant and Daeshon. Mabel Howard testified that she spoke to Andrea on the
telephone at 11:00, and heard appellant in the background saying, "Bastard-ass child." Andrea,
who was eleven years old, testified that appellant was "fussing" at Daeshon and calling him bad
names, including "mother fucker" and "bastard." Andrea further testified that she saw appellant
shake Daeshon and that his head "was just going back and forth."

The only defense witness at the guilt stage was the Nueces County Medical
Examiner. He testified that he examined the autopsy report and photographs, and was of the
opinion that the injuries to Daeshon could have been inflicted more than one day before death. 
He also testified that the child would have had to have been shaken vigorously for fifteen to
twenty seconds, which is longer than the shaking incident described by Andrea Howard.

Viewing the evidence in the light most favorable to the verdict, we hold that a
rational trier of fact could find beyond a reasonable doubt that appellant intentionally or knowingly
caused serious bodily injury to Daeshon Brittenum by shaking him with her hands. Moreover,
viewing the evidence neutrally, we hold that the finding of guilt is not manifestly unjust. Point
of error two is overruled.

Appellant further contends the district court erred by exempting Shira Sledge from
the witness exclusion rule. See Tex. R. Evid. 614. The court exempted Sledge on the ground
that she was the victim. See id. rule 614(4). We agree with appellant that this was error. 
Daeshon Brittenum's status as victim was not transferable to his mother, particularly when she
was a witness for the prosecution. A violation of the rule is not, however, reversible error in
itself. See Guerra v. State, 771 S.W.2d 453, 474 (Tex. Crim. App. 1988). We must determine
if appellant was harmed by the error. See id.

The purpose of the witness exclusion rule is to prevent the testimony of one witness
from influencing the testimony of another. See Bell v. State, 938 S.W.2d 35, 50 (Tex. Crim.
App. 1996). The record reflects that Sledge heard the testimony of the emergency room physician
and the medical examiner, but left the courtroom before the testimony of the pediatrician who
examined Daeshon on June 5. There is no indication that she returned to the courtroom before
her own testimony. Sledge's testimony was principally concerned with the events of the day
preceding the child's death. The emergency physician and medical examiner, on the other hand,
testified to the child's condition following his death. We are satisfied that Sledge's testimony was
not influenced by hearing the testimony of these witnesses. Point of error four is overruled.

Finally, appellant contends her appointed attorney on appeal rendered ineffective
assistance because he filed a frivolous appeal brief. We have already stated that counsel's brief
satisfies the requirements of Anders and its progeny. We note that the contentions raised by
appellant in her first and third pro se points of error are discussed thoroughly in counsel's brief,
and his conclusion that no reversible error is shown has been confirmed by this Court. Point of
error three is overruled.

The judgment of conviction is affirmed.



 

 J. Woodfin Jones, Justice

Before Justices Jones, Yeakel and Patterson

Affirmed

Filed: July 27, 2000

Do Not Publish



king.

Renata Prater worked with appellant. She testified that appellant showed her a
photograph of a baby appellant identified as Jeremy's child. "I said, 'Well, it's a cute baby,' and
she said 'No,' the baby wasn't cute, the baby was ugly, and that she didn't like the baby."

Mabel Howard was another of appellant's coworkers. Appellant occasionally
watched Howard's two daughters, Andrea and Angela. The two girls spent the evening of June
5, 1998, with appellant and Daeshon. Mabel Howard testified that she spoke to Andrea on the
telephone at 11:00, and heard appellant in the background saying, "Bastard-ass child." Andrea,
who was eleven years old, testified that appellant was "fussing" at Daeshon and calling him bad
names, including "mother fucker" and "bastard." Andrea further testified that she saw appellant
shake Daeshon and that his head "was just going back and forth."

The only defense witness at the guilt stage was the Nueces County Medical
Examiner. He testified that he examined the autopsy report and photographs, and was of the
opinion that the injuries to Daeshon could have been inflicted more than one