IN THE COURT OF CRIMINAL APPEALS


OF TEXAS



 




NO. PD 166-04






TRISHA UNDERWOOD, Appellant



v.



THE STATE OF TEXAS






ON DISCRETIONARY REVIEW


FROM THE EIGHTH COURT OF APPEALS


ECTOR COUNTY






 Womack, J., delivered the opinion for a unanimous Court.



 The question in this case of public lewdness is whether the evidence of the
appellant's intent to arouse or gratify the sexual desire of another was sufficient.

 Public lewdness is committed when a person knowingly engages in an act of
sexual contact in a public place. (1) "'Sexual contact' means  any touching of  any part
of the genitals of another person with intent to arouse or gratify the sexual desire of any
person." (2) 

 The State alleged that the appellant committed the offense of public lewdness by
"knowingly engag[ing] in an act of sexual contact by touching the genitals of J. Medrano,
with the intent to arouse and gratify the sexual desire of J. Medrano in a public place, to
wit: Playmates," on or about April 11, 2002.

 In a trial by jury, the State produced evidence that, on the date alleged, four Odessa
police officers went to "Playmates." It was a place of business that the supervising officer
called "an adult cabaret" or "topless bar." Officer Jordan Medrano testified that he knew
"topless dancing" went on there. The appellant, in her counsel's words, was "a dancer in a
topless bar."

 The officers were men in plain clothes. Each was charged a cover charge of ten
dollars when he entered Playmates. They sat at tables, bought and drank alcoholic
beverages, watched women dancing on the stage, and gave tips to some of the dancers.
Each officer paid for one or more "lap dances" or "table dances," which are private
dances at a table or couch where a customer is sitting. The appellant was the only dancer
who was charged with public lewdness.

 Officer Medrano testified that he asked the appellant for a table dance, and paid
her twenty dollars. She took him from his table to a "couch seat," which was "a large
square seat. More of a long chair [than a couch]." The officer testified that "she removed
her dress." No one testified what, if anything, the appellant wore after she removed her
dress, except to say that she was not one of the dancers who "leave their lingerie on"
when they remove their dresses to do table dances.

 Medrano was clothed during the dance. He testified, "She began her dance in front
of me. And she was dancing, at which time she then got between my legs and started
rubbing my genitals with her legs." She touched his "genital area" with her knee and
thigh.

 The appellant (in her counsel's words) "turn[ed] and show[ed] her backside to
[Medrano] during the dance." Medrano said, "She sat in my lap, and  her buttocks
touched my genitals." Asked on cross-examination, "And did she sit down in your lap?"
Medrano answered, "She sat down on my genital area."

 Medrano testified he "was kind of shocked at first" when the appellant did that to
him. When he was asked if his reaction changed into anything else, he said it did not. He
wrote in his report that he was "stunned and alarmed" when the appellant touched his
genital area.

 Another officer testified that, looking from his table to the couch area in the "fairly
dimly lit" establishment, he saw "Officer Medrano seated at -- kind of in a chair, seated
back like this with his hands out to the side away from his body. And I observed Mrs.
Underwood sitting on his lap."

 The jury found the appellant guilty of public lewdness.

 The court of appeals reversed and rendered a judgment of acquittal because the
evidence was insufficient, as a matter of law, to prove that the appellant had the intent to
arouse Medrano's sexual desire. Underwood v. State, No. 08-03-00061-CR, 2003 Tex.
App. LEXIS 10228 (Tex. App. -- El Paso 2003) (not designated for publication). The
court said (slip op. at 4):

 We conclude Medrano's testimony supplies no direct evidence of
arousal or gratification.

 Nevertheless, intent to arouse or gratify another's sexual desire may
be inferred from defendant's conduct, remarks, and surrounding circumstances. [Citations omitted.] Here, we find nothing from which the jury
could infer that Underwoods's intent was arousal. Point One is sustained.


 We hold that the court of appeals erred.

 The question of whether evidence is sufficient, as a matter of law, to sustain a
conviction is resolved by applying the "familiar standard" of "whether, after viewing the
evidence in the light most favorable to the prosecution, any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt." (3) This standard
provides due process, and it is applied by this court. (4) It must be applied likewise by the
courts of appeals. (5)

 Evidence that the appellant removed her dress and was wearing no lingerie, stood
in front of the complainant and danced, turned and showed her backside to him during the
dance, got between his legs, touched his genital area with her knee and thigh, and touched
his genitals with her buttocks when she sat on him, was evidence, viewed in the light
most favorable to the prosecution, from which any rational trier of fact could have found
the element of intent to arouse sexual desire beyond a reasonable doubt.

 Another court of appeals has so held on similar facts.

 On July 31, 1987, [Officer Lemonitsakis] went to the Executive
Suite, a Harris County club where the appellant worked as a "topless"
dancer. Lemonitsakis testified that the club allowed its stage dancers to
perform "table" dances for individual customers. The club required a
minimum $10.00 fee for the dance but allowed patrons to pay more. A
"table" dance is done for an individual customer at his table. The officer
had previously visited the club on June 15 when he paid the appellant
$10.00 to do a table dance for him. He was working undercover at the time.

 The appellant approached the officer's table when he went to the
club on July 31. She wore only a G-string. She recognized him from his
June 15 visit and asked if she could perform a table dance for him. When he
agreed she turned his swivel chair away from the table and then spread his
legs apart. During the dance the appellant rubbed her bare thighs and
buttocks against the officer's penis. Lemonitsakis testified that because the
appellant could have danced two feet away from him and still earned the
$10.00 he paid her, he inferred from "what she was doing to me" that the
appellant knew she was touching his genitals and did so to encourage him
to pay her more for the dance.

 The appellant approached the officer, offered to dance for him,
danced much closer to the officer than was necessary to earn the $10.00,
and actually made contact with his genitals. Moreover, the record shows
that she touched only his genitals, and therefore permits the inference that
her conduct was purposeful, knowing and intentional. (6)


Lemonitsakis was permitted to testify about his inferences, but such testimony would not
be necessary for a rational jury to infer that such a dancer had the intent to arouse sexual
desire.

 The judgment of the court of appeals is reversed, and the case is remanded to that
court for consideration of the appellant's other points.


En banc.

Delivered November 10, 2004.

Do Not Publish.
1. See Tex. Penal Code § 21.07(a)(3).
2. Id., § 21.01(1)(B)(2)
3. Griffin v. State, 614 S.W.2d 155, 159 (Tex. Cr. App. 1981) (quoting Jackson v.
Virginia, 443 U.S. 307, 319 (1979)).
4. Turner v. State, 636 S.W.2d 189, 194 n.4 (Tex. Cr. App. 1980).
5. See Clewis v. State, 922 S.W.2d 126, 132-33 (Tex. Cr. App. 1996) ("Texas courts have
adopted the Jackson standard as the legal sufficiency standard in direct appeals").
6. Byrum v. State, 762 S.W.2d 685, 688 (Tex. App. -- Houston [14th Dist.] 1988, no pet.)