

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00429-CR

MONTY RAY JUDGE                                                        APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1365288D

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Monty Ray Judge of burglary of a habitation as a habitual offender, made an affirmative deadly weapon finding, and assessed his punishment at sixty years' confinement. The trial court sentenced him accordingly. Appellant brings a single issue on appeal, arguing that the evidence is insufficient to support the jury's verdict. Specifically, he argues that the

---

[1]See Tex. R. App. P. 47.4.

evidence is insufficient to show that he attempted to commit theft, intended to commit theft, or committed theft. Because there is sufficient evidence from which a jury could have found beyond a reasonable doubt the theft element of the burglary, we affirm the trial court's judgment.

**Brief Facts**

The indictment charged Appellant with committing burglary of a habitation by entering David Cherry's home with intent to commit theft, by entering the home and attempting to commit theft, or by entering the home and committing theft.[2] The indictment also contained a deadly weapon notice, alleging that Appellant had used a firearm in the burglary, and a habitual offender notice alleging that he had previously been convicted of the manufacture of a controlled substance of 400 grams or more and of robbery causing bodily injury.

At trial, Cherry testified that on April 4, 2014, when he returned home from work, he noticed that the windows in his garage were blocked with clothes and pieces of trash bags and wood panel. As he went through the garage and into his house, his home looked as though it had been ransacked, "[l]ike a tornado went through it." When Cherry went farther into the house to a bedroom that he rented to Andy Moxley, he found Appellant. Appellant pointed Cherry's .22 semiautomatic rifle at Cherry's face and told him, "Don't call the police or I will kill you."

---

[2]*See* Tex. Penal Code Ann. § 30.02(A)(1), (3) (West 2011).

Cherry turned and ran from the house. When he got to the street, he fell. He turned and saw Appellant outside, pointing the rifle at him and banging on the side of it, as though it were jammed. Appellant turned and ran back toward Cherry's house, and Cherry crawled across the street to a neighbor's yard and then to his neighbor's front door. From there, Cherry called 911 from his cell phone.

Meanwhile, Appellant ran back into Cherry's house and then ran out of the house toward Cherry's next-door neighbor's house, carrying Cherry's 30-30 lever-action rifle, trying to cover the rifle with a shirt. Appellant made his way into Cherry's neighbor's back yard.

Diego Garcia, the neighbor, testified that Appellant ran into his back yard. Garcia testified that he heard a loud bang on his door, as though Appellant were hitting or kicking the door, although in his statement to the police, Garcia said only that he saw the door handle jiggle. In any event, Garcia called 911. Appellant was unable to enter Garcia's house, and he left.

At trial, Appellant testified that on the day in question, he began hearing voices after taking methamphetamine. He stated that he went into Cherry's house to hide. He testified that he found a shotgun and decided to try to kill himself, so he looked for the shells for the gun, making a mess in the process. When he could not find the shells, he picked up the rifle; at that point, Cherry arrived home. Appellant denied threatening Cherry. Appellant stated that when Cherry came in, Cherry said, "Hey," Appellant responded, "Hey," and then Cherry

3

ran off. Appellant testified that he also went outside and ran the opposite way, toward a pawn shop on Camp Bowie.

At the pawn shop, Appellant went up onto the roof, where he was found by police. After about an hour, negotiators convinced Appellant to come down from the roof.

When the police allowed Cherry to go back to his house, he found a bag loaded with items belonging to Moxley and him on the back porch. Neither Moxley nor Cherry had placed the items in the bag, and the bag had not been on the porch when Cherry left for work that day.

**Sufficiency of the Evidence**

In reviewing the sufficiency of the evidence to support a conviction, this court views all the evidence in the light most favorable to the verdict to determine whether, based on that evidence and reasonable inferences therefrom, a rational factfinder could have found the essential elements of the crime beyond a reasonable doubt.[3] This standard accounts for the factfinder's duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."[4]

---

[3] *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

[4] *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

4

The standard of review is the same for direct and circumstantial evidence cases.[5] Circumstantial evidence is as probative as direct evidence in establishing guilt.[6] Each fact need not point directly and independently to the guilt of the accused as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.[7] The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony, and this court defers to the jury's determinations in this regard.[8] Likewise, this court presumes that the jury resolved any conflicting inferences in favor of the verdict and defers to that resolution as well.[9]

A person commits theft if, with intent to deprive the owner of the owner's property, he appropriates the property without the owner's effective consent.[10] The term "deprive" means

> (A) to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner;

---

[5]*Isassi*, 330 S.W.3d at 638.

[6]*Id.*

[7]*Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013).

[8]*Id.*

[9]*Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Wise*, 364 S.W.3d at 903.

[10]Tex. Penal Code Ann. § 31.03 (West Supp. 2014).

5

(B) to restore property only upon payment of reward or other compensation; or

(C) to dispose of property in a manner that makes recovery of the property by the owner unlikely.[11]

Appellant argues that the State failed to prove that he intended to deprive Cherry of the rifle because there is no evidence of demand of payment or that the rifle was disposed of in such a way as to make Cherry's recovery of the rifle unlikely and because "the rifle wasn't withheld from Cherry permanently or for so long a time that a major portion of the value or enjoyment of the rifle was lost [since] Cherry had his rifle back by the end of the day." Appellant cites no authority for this interpretation of the statute. The Texas Court of Criminal Appeals has addressed this issue, explaining in a case in which the defendant was charged with stealing a taxi cab:

> Intent to deprive must be determined from the words and acts of the accused. The appellant's argument is that his driving the taxicab only a few miles and leaving it parked on a street while he walked a mile away from it[] means that no rational finder of fact could have believed beyond a reasonable doubt that he had an intent to deprive the owner when he took the cab. It must be remembered that the element which must be proved is not a deprivation, but the defendant's intent to deprive at the time of the taking. The fact that the deprivation later became temporary does not automatically mean that there was no intent to deprive permanently or for so long as to satisfy the statutory definition.[12]

---

[11]*Id.* § 31.01(2).

[12]*Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981) (citations and footnote omitted).

6

In the case now before this court, consent is not at issue. The record reflects that, without Cherry's consent, Appellant entered Cherry's house and ransacked it. When Cherry confronted him, Appellant pointed Cherry's .22 rifle at Cherry and threatened to kill him. When Cherry fled, Appellant went outside and pointed the rifle at him. There is evidence from which the jury could infer that Appellant attempted to pull the trigger and that the rifle jammed. Appellant went back into the house but then ran from the house, carrying Cherry's 30-30 rifle and attempting to hide it under his shirt. There is also evidence from which the jury could infer that Appellant abandoned a bag of items on the back porch that he had stolen from inside the home. From the evidence, the jury could infer that Appellant intended to keep the rifle when he took it. Applying the appropriate standard of review, we hold that the record adequately supports the theft element of the burglary conviction and the burglary conviction itself. Consequently, we overrule Appellant's sole issue.

**Conclusion**

Having overruled Appellant's only issue, we affirm the trial court's judgment.

                                        /s/ Lee Ann Dauphinot
                                        LEE ANN DAUPHINOT
                                        JUSTICE

PANEL:  DAUPHINOT, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  June 11, 2015