TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00485-CR






Uvaldo Ramos, Jr., Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT


NO. B-95-0098-S, HONORABLE DICK ALCALA, JUDGE PRESIDING






 Uvaldo Ramos, Jr., appeals from a judgment convicting him of the felony offense
of possession with intent to deliver a controlled substance, methamphetamine, in an amount of 400
grams or more. Tex. Health & Safety Code Ann. §§ 481.102(6), .112(f) (West Supp. 1998). The
trial court assessed punishment at imprisonment for forty-eight years and a $50,000 fine. We will
affirm the judgment.


THE CONTROVERSY


 The trial was held without a jury. The evidence showed that a deputy sheriff
stopped appellant's sister, Tomasita Witcher, for a traffic violation in San Angelo and arrested her
pursuant to an outstanding warrant. During a search of her vehicle incident to the arrest, the
deputy discovered over 700 grams of methamphetamine in a Barbie doll box. Witcher told police
she had come from San Antonio at appellant's request to deliver the contraband to him. She
agreed to cooperate with the authorities.

 The police returned the methamphetamine to Witcher's automobile and disabled the
vehicle where it was parked at a convenience store. Witcher telephoned appellant. She told him
she had been arrested for giving "hot" bank checks and asked him to move the car. Appellant
picked up the keys to Witcher's car at the police station and drove with Linda Sepeda, another
sister, to the convenience store. After appellant's efforts to start Witcher's car failed, he retrieved
from the back seat the box containing methamphetamine and placed the box in his own vehicle. 
The police arrested appellant before he could leave the convenience-store parking lot. The
contraband was introduced in evidence as State's exhibit 23.

 Appellant brings four points of error.


JURY WAIVER


 In his first point of error, appellant contends the trial court abused its discretion in
refusing to allow him to withdraw his waiver of a trial by jury. The record contains a written
waiver signed by appellant and his attorney, and approved by the prosecutor and the district court. 
Tex. Code Crim. Proc. Ann. art. 1.13(a) (West Supp. 1998). The waiver was filed on May 23,
1996. The case was eventually set for trial without a jury on June 24, 1997. On June 20,
appellant filed a request to withdraw the waiver. The trial court denied the request on the morning
of June 24 and proceeded with a bench trial on appellant's plea of not guilty.

 Appellant argues that his waiver on May 23, 1996, was involuntary and contends
he satisfied his burden of proof by showing that granting his request would not result in any
adverse consequences to trial witnesses, the court, or the State. See Marquez v. State, 921 S.W.2d
217, 221 (Tex. Crim. App. 1996). We disagree.

 The legislature has provided that a criminal defendant may waive the right to trial
by jury, provided the waiver is made by the defendant in writing in open court with the consent
and approval of the court and the prosecutor. Tex. Code Crim. Proc. Ann. art. 1.13(a) (West
Supp. 1998). When a defendant executes a valid jury waiver, "a subsequent request by the
accused to withdraw the jury waiver is addressed to the discretion of the trial court." (1) Marquez,
921 S.W.2d at 221. A defendant seeking to withdraw a previously executed waiver bears the
burden of showing that his request was made "sufficiently in advance of trial such that granting
his request will not: (1) interfere with the orderly administration of the court, (2) result in
unnecessary delay or inconvenience to witnesses, or (3) prejudice the State." Id. at 223.

 Appellant introduced in evidence two exhibits to support his request. The first was
appellant's affidavit stating that his waiver was invalid because it was not given "freely,
voluntarily, understandingly, or knowingly" and that his attorney "coerced and pressured" him
to sign the waiver. The second exhibit was a letter to the court written by appellant's attorney on
September 24, 1996, notifying the court of appellant's desire to withdraw from a plea agreement
made in June 1996.

 The letter reads, in part,


[Appellant] entered into a plea agreement and signed a stipulation in June of 1996. 
The plea agreement involved a considerable amount of penitentiary time. Since
that time, Mr. Ramos has reconsidered his agreement and no longer wishes to
honor that agreement. He did sign a stipulation of evidence in June immediately
prior to a scheduled jury selection in the case of his wife, Cecilia Ramos.



No "stipulation" signed by appellant in June 1996 appears in the record; however, the waiver of
jury trial, signed by appellant on May 23, 1996, was signed with the understanding that appellant
would plead guilty in return for a prison term of thirty-five years and restitution of $140.00. No
plea was entered on the record at the May 23, 1996, hearing at which appellant consented to the
foregoing terms; the case was reset for appellant's plea to be heard on August 7, 1996. The
setting was postponed several times, and appellant eventually entered a plea of not guilty.

 Contrary to appellant's contentions, his attorney's letter does not amount to a 
request to withdraw the waiver of jury. The letter articulates instead the appellant's wish to reject
the terms of the plea bargain. The waiver of jury trial and the agreement to a plea bargain
requiring thirty-five years in prison and restitution of $140.00 are not so intertwined that a
reconsideration of one necessarily incorporates the other. Indeed, at the hearing on May 23, 1996,
the court specifically cautioned appellant that in the event he rejected the plea bargain, he would
still be held to the terms of the jury waiver. The letter therefore does not help appellant meet his
burden of proof regarding withdrawal of the waiver. Accordingly, we will consider the other
exhibit, a signed affidavit introduced by appellant to support his request to withdraw his waiver.

 Appellant's affidavit summarizes the events surrounding his signing the waiver. 
Appellant's wife was charged with possession of a controlled substance in a separate but related
cause. The day appellant signed the waiver, his wife's trial was about to begin. According to the
testimony of a former assistant district attorney involved in the case, the State offered appellant's
wife probation if appellant would agree to the terms of a plea bargain. In his affidavit, appellant
contends that his attorney pressured him into signing the jury waiver by telling him "that if I did
not sign the waiver and accept the State's offer, that both me and my wife would go to prison and
we would lose our children."

 Appellant's claims are rebutted by the record. At the May 23, 1996 hearing, the
court questioned appellant, with his attorney present, concerning his waiver of a jury trial.
Appellant affirmatively acknowledged that he waived his right to a jury trial. Moreover,
testimony given on June 24, 1997, by the former assistant district attorney rebutted appellant's
claim that granting the withdrawal of waiver would not have inconvenienced the court or
prejudiced the State. If the defendant's claims are rebutted by the State, by the trial court, or by
the record itself, the trial court does not abuse its discretion in refusing to allow withdrawal of the
waiver. See Marquez, 921 S.W.2d at 223.

 Because appellant did not meet the required burden of proof, the trial court did not
abuse its discretion in refusing to allow withdrawal of the waiver. We overrule appellant's first
point of error.


EVIDENCE OF POSSESSION


 In his second point of error, appellant contends the evidence is both legally and
factually insufficient to prove he knowingly possessed methamphetamine. To show "the accused's
connection with the drug was more than just fortuitous," the State must prove (1) that the accused
exercised care, custody, control, or management over the controlled substance and (2) that the
accused knew that what he possessed was contraband. See Martin v. State, 753 S.W.2d 384, 387
(Tex. Crim. App. 1988); Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); see also
Tex. Health & Safety Code Ann. §§ 481.002(38), .112(a) (West Supp. 1998). Proof of these
elements involves establishing "affirmative links" between the accused and the contraband,
demonstrating both that the accused had control over it and that the accused had knowledge of its
existence and character. See Levario v. State, 964 S.W.2d 290, 294 (Tex. App.--El Paso 1997,
no pet.).

 Appellant contends his possession of the methamphetamine was not of sufficient
duration to establish his care, custody, control, or management over the substance or that he knew
the substance possessed was contraband. We disagree.

 Several facts and circumstances supply the necessary "affirmative links." 
Appellant asked Witcher to transport the contraband from San Antonio to San Angelo. She did
so in her automobile. He was given the key to move Witcher's car. When his attempts to start
the disabled vehicle failed, appellant removed from the back seat of Witcher's car the only box
not wrapped like a Christmas present and placed the box in his vehicle. The box contained the
contraband. When police arrested appellant, he was in close proximity to the contraband. See
Fields v. State, 932 S.W.2d 97, 103-04 (Tex. App.--Tyler 1996, pet. ref'd); Wallace v. State, 932
S.W.2d 519, 524-25 (Tex. App.--Tyler 1995, pet. ref'd). When considered in a light most
favorable to the verdict, the evidence would allow a rational trier of fact to find that appellant
knowingly and intentionally possessed the methamphetamine. See Jackson v. Virginia, 443 U.S.
307, 318-19 (1979); Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991); Griffin v. State,
614 S.W.2d 155 (Tex. Crim. App. 1981).

 Appellant also contends that the evidence is factually insufficient to prove he
knowingly and intentionally possessed the methamphetamine. Having reviewed all the evidence,
we hold that the verdict is not so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust. See Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996);
Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd as untimely filed). We
overrule appellant's second point of error.


CHAIN OF CUSTODY


 In his third point of error, appellant contends the evidence is both legally and
factually insufficient to establish a chain of custody of State's exhibit 23, a bag of
methamphetamine. Appellant first argues that the State failed to adduce evidence proving custody
of the methamphetamine before appellant's possession of the drugs at the convenience store. (2)
Appellant also criticizes the evidence showing various links in the chain of custody following his
arrest.

 To prove sufficiently the chain of custody, the State was not required to introduce
evidence regarding events leading up to appellant's possession. The chain of custody necessary
to be proved began when the methamphetamine was seized from appellant, not when it was first
discovered by the deputy in Witcher's car. See Sneed v. State, 875 S.W.2d 792, 794 (Tex.
App.--Fort Worth 1994, no pet.). Accordingly, we will examine the sufficiency of the evidence
beginning with seizure of the methamphetamine from appellant.

 The State introduced testimony that the seizing officer saw appellant carrying a
package from Witcher's car to his van. Appellant put the package in his van and was arrested. 
The seizing officer took custody of the package containing the controlled substance and locked it
in his trunk. He gave the methamphetamine to another officer who locked the drugs in an
evidence room. A police detective retrieved the methamphetamine from the evidence room and
submitted it to a laboratory for analysis.

 Each person involved in the chain of custody testified at trial, and appellant
introduced no evidence of tampering. (3) Once testimony establishes the chain of custody into the
laboratory, any further objection goes to the weight of the evidence, rather than its admissibility. 
See Medellin v. State, 617 S.W.2d 229, 233 (Tex. Crim. App. 1981). Holding the evidence is
both legally and factually sufficient to prove chain of custody, we overrule appellant's third point
of error.


ADMISSIBILITY OF STATE'S EXHIBIT


 In his fourth point of error, appellant contends the trial court erred in overruling
his objection to the admission of State's exhibit 23 in evidence because the State failed to prove
chain of custody. The State rejoins that appellant failed to object to admission of the exhibit in
evidence. Because we have determined that the admission of State's exhibit 23 was not error, we
need not determine whether appellant raised a proper objection to the admissibility of the exhibit. 
 We overrule appellant's fourth point of error and affirm the trial court's judgment.



 

 John Powers, Justice

Before Justices Powers, Kidd and Davis*

Affirmed

Filed: December 3, 1998

Do Not Publish











* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. An appellate court may reverse a trial court's decision for an abuse of discretion only when
it appears that the court applied an erroneous legal standard, or when no reasonable view of the
record could support the trial court's conclusion under the correct law. See Montgomery v. State,
810 S.W.2d 372 (Tex. Crim. App. 1990) (opinion on rehearing).
2. Specifically, appellant contends as follows: (1) the officer who stopped Witcher and
discovered the contraband did not testify; (2) the substance in Witcher's possession was never field
tested before it was returned to Witcher's car; and (3) no law-enforcement official testified that
Witcher's car remained unopened from the time the drugs were returned to the car until appellant
entered it at the convenience store.
3. Appellant contends that the State did not offer any evidence that the police evidence room
was secure, nor did the State present a witness who could identify State's exhibit 23 as the
substance that was placed in the evidence room. The record refutes both contentions.



ing up to appellant's possession. The chain of custody necessary
to be proved began when the methamphetamine was seized from appellant, not when it was first
discovered by the deputy in Witcher's car. See Sneed v. State, 875 S.W.2d 792, 794 (Tex.
App.--Fort Worth 1994, no pet.). Accordingly, we will examine the sufficiency of the evidence
beginning with seizure of the methamphetamine from appellant.

 The State introduced testimony that the seizing officer saw appellant carrying a
package from Witcher's car to his van. Appellant put the package in his van and was arrested. 
The seizing officer took custody of the package containing the controlled substance and locked it
in his trunk. He gave the methamphetamine to another officer who locked the drugs in an
evidence room. A police detective retrieved the methamphetamine from the evidence room and
submitted it to a laboratory for analysis.

 Each person involved in the chain of custody testified at trial, and appellant
introduced no evidence of tampering. (3) Once testimony establishes the chain of custody into the
laboratory, any further objection goes to the weight of the evidence, rather than its admissibility. 
See Medellin v. State, 617 S.W.2d 229, 233 (Tex. Crim. App. 1981). Holding the evidence is
both legally and factually sufficient to prove chain of custody, we overrule appellant's third point
of error.


ADMISSIBILITY OF STATE'S EXHIBIT