# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00487-CR

**Lee Joseph Maldonado, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT NO. B-02-1019-S, HONORABLE THOMAS J. GOSSETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Lee Joseph Maldonado guilty of arson and assessed a twenty-five year prison term.  *See* Tex. Pen. Code Ann. § 28.02 (West 2003).  In two points of error, he challenges the legal and factual sufficiency of the evidence.  Finding the evidence sufficient, we affirm the conviction.

Appellant lived at 1714 Greenwood in San Angelo with Adrian Ortega, Roger Perez, and Jessica Martinez.  They were among a group of people who spent the day of August 25, 2002, drinking beer, eating barbeque, and working on Ortega's car.  Between 6:30 and 7:00 p.m., an argument broke out between appellant and Ortega.  Ortega struck appellant and knocked him to the floor.  Witnesses testified to seeing appellant crying afterwards.  Appellant told one witness that Ortega had "kicked him out" for not paying his share of the bills.

Around 8:15 p.m., the group went to Fred Rocha's house to watch television. There appeared to be no lingering hard feelings between appellant and Ortega. Some time between 8:30 and 9:00 p.m., Ortega announced that he was tired and wanted to go to bed. Ortega and his fiancee, Jennifer Perez (Roger Perez's sister), together with appellant, Roger Perez and Jessica Martinez, returned to 1714 Greenwood. Ortega went to his bedroom and promptly fell asleep on the bed, still in his clothes. Roger, Jennifer, and Jessica left the house to run an errand. As they were leaving, appellant told Jennifer that "he loved Adrian and that Adrian would always forgive him for whatever he did."

When Roger, Jennifer, and Jessica returned to 1714 Greenwood, appellant and his car were gone. Smelling smoke and realizing that the house was on fire, and unable to enter the house because of the heavy smoke, they asked a neighbor to call for help. The fire call was received at 9:30 p.m. Firefighters wearing breathing equipment entered the house and found Adrian Ortega lying on the bedroom floor. Ortega later died from soot and smoke inhalation. His blood alcohol concentration was .26.

Fred Rocha and his wife, Helen Leos, testified that thirty minutes to an hour after leaving their house with Ortega and his friends, appellant returned alone. Appellant was there when Rocha received a telephone call telling him that something was going on at 1714 Greenwood, which was only a few blocks away. Rocha went outside and could see the emergency lights. Rocha said that appellant seemed uninterested. Instead of going to his house, appellant agreed to give Leos, who was not feeling well, a ride to the hospital. Leos described appellant as "disoriented, not himself—he was just acting weird."

2

On the night of the fire, Diane Roach and Tasha Gray were visiting Holly Baskin in Baskin's apartment across the street from 1714 Greenwood. Roach testified that between 8:00 and 8:20 p.m., she saw appellant leave the house smoking a cigarette and drive away in his car. As appellant left the house, Roach noticed "an orange flickery." She said to her friends, "It looks like a flame." As they looked, Roach suggested that "it's probably one of those new lights . . . that look like flame." They decided not to call the fire department. About twenty minutes later, Baskin's son ran into the apartment and reported that the house across the street was on fire.

Tasha Gray and Holly Baskin confirmed Roach's testimony. Gray said she noticed a "flicker" in the doorway as appellant left the house between 8:00 and 8:30. Baskin described what she saw as an "orange glow." Like Roach, Gray and Baskin did not believe at the time that what they saw was a fire. Both testified that they assumed nothing was wrong because appellant seemed so calm as he walked away from the house.

San Angelo police officer Thomas Daniel arrived at 1714 Greenwood minutes after the fire was reported. Through conversations with Roger Perez and other witnesses, Daniel learned who lived in the house and of the fight earlier that day between appellant and Ortega. Daniel testified that appellant arrived at the scene at about 10:20 p.m. He described appellant as "very nonchalant." Appellant told Daniel that he had spent most of the day at his cousin's house, had returned to the Greenwood house at some unspecified time, had left again at about 5:00 p.m. and, after a brief stop at his mother's house, had spent the rest of the evening simply driving around in his car alone.

3

Daniel spoke to appellant again later that night. This time, appellant admitted that he and Ortega had argued, but he said that "it was nothing serious." He also told the officer that he had returned to the house at about 6:30 or 7:00 p.m. and that "everything had calmed down" by that time.

Fire Marshall Ken Land testified that the fire at 1714 Greenwood began in an interior closet by the front door and had burned for about twenty minutes, during which time it produced a large amount of toxic smoke. Land found no evidence that a flammable liquid had been used to start the fire. He also found no evidence of an electrical short or other accidental source of ignition. Land was of the opinion that the fire had been intentionally started, but he did not know the precise means by which it was started.

Land discovered a saliva stain on the wall of the bedroom in which Ortega was found. The stain contained soot particles, and Land believed that "whoever put that on the wall had been breathing in the black soot, carbon particles, and then had expelled them onto the wall." This person would have been awake when this happened. Land also examined appellant on the night of the fire. He looked at appellant's hands and shoes, and smelled his shirt. He did not smell smoke or detect the odor of a flammable liquid.

When there is a challenge to the sufficiency of the evidence to sustain a criminal conviction, the question presented is whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (legal sufficiency); *Griffin v. State*, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981) (legal sufficiency); *Zuniga v. State*, No. 539-02, 2004 Tex. Crim. App. LEXIS 668, at *20 (Tex. Crim.

4

App. Apr. 21, 2004) (factual sufficiency).  In a legal sufficiency review, all the evidence is reviewed in the light most favorable to the verdict; it is assumed that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict.  *Griffin*, 614 S.W.2d at 159 (citing *Jackson*, 443 U.S. at 318-19).  In a factual sufficiency review, all the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses.  *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.).  Although due deference still must be accorded the fact finder's determinations, particularly those concerning the weight and credibility of the evidence, the reviewing court may disagree with the result in order to prevent a manifest injustice.  *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000).  The evidence will be deemed factually insufficient to sustain the conviction if the proof of guilt is too weak or the contrary evidence is too strong to warrant a finding of guilt beyond a reasonable doubt.  *Zuniga*, at *20; *see Johnson*, 23 S.W.3d at 11.

Appellant argues that the evidence is legally insufficient to sustain the guilty verdict because the circumstantial evidence does not exclude every other reasonable hypothesis except his guilt.  The alternative reasonable hypothesis construct on which appellant relies has been rejected.  *Geesa v. State*, 820 S.W.2d 154, 161 (Tex. Crim. App. 1991).  Because the evidence is viewed in the light most favorable to the verdict, the jury's choice between conflicting theories of the case must be respected.  *Id.* at 159.

Appellant was seen leaving the house twenty minutes before the fire was discovered.  The witnesses who saw appellant leave also testified to seeing what might have been flames beside the door, in the area where the fire was determined to have begun.  There is evidence that Ortega had

5

ordered appellant to move out of the house, resulting in a fight between the two men. Appellant later told Ortega's girlfriend that Ortega would forgive him for what he might do. Appellant's friends testified to his strange behavior later that night, and appellant gave a false statement to the investigating officer regarding his activities that night. Applying the proper standard of review, we hold this evidence to be legally sufficient to support appellant's arson conviction.

The existence of alternative hypotheses is relevant in a factual sufficiency review. *Orona*, 836 S.W.2d at 321. Appellant posits three: (1) appellant might have accidentally started the fire with his lit cigarette as he left the house; (2) Ortega might have awakened after appellant left and, in his drunken state, somehow started the fire; (3) another person might have entered the unlocked house and started the fire. Appellant also argues that because the fire was reported at 9:30 and the fire marshal testified that it burned for about twenty minutes, he could not have started the fire before leaving the house at 8:00. Finally, appellant stresses that his clothing did not smell of smoke or flammable liquid.

Although the witnesses who saw the "orange glow" as appellant left the house testified that the time was about 8:00 p.m., they also testified that the fire was discovered about twenty minutes later. The jury could reasonably infer that these witnesses were mistaken about the time. Because the fire marshal found no evidence of an accelerant, the absence of such an odor on appellant's clothing is not exculpatory. The fact that appellant did not have a smoky odor could be explained by his having left the house immediately after starting the fire, before it was fully engaged. And while it is possible that the fire began in one of the alternative ways hypothesized by appellant, the relative strength of the State's evidence makes these hypotheses unlikely. We hold that the jury's

6

finding of guilt beyond a reasonable doubt was not manifestly unjust even when all the evidence is viewed neutrally.

We overrule appellant's two points of error and affirm the judgment of conviction.


_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   September 10, 2004

Do Not Publish