# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-04-00122-CR
NO. 03-04-00123-CR
NO. 03-04-00124-CR
NO. 03-04-00125-CR
NO. 03-04-00126-CR
NO. 03-04-00127-CR
NO. 03-04-00128-CR

**Paul Gordon Music, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT
NOS. B-03-0557-S, B-03-0559-S, B-03-0560-S, B-03-0561-S, B-03-0562-S, B-03-0563-S, B-03-0564-S
HONORABLE RAE LEIFESTE, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Paul Gordon Music appeals from five convictions for indecency with a child by contact and two convictions for attempted indecency with a child by contact. *See* Tex. Pen. Code Ann. §§ 15.01(a), 21.11(a)(1) (West 2003). The jury assessed twenty-year prison terms for the former offenses and ten-year prison terms for the latter. The jury also assessed a $10,000 fine in each cause.

Appellant contends the evidence is legally insufficient to sustain six of the seven guilty verdicts. He also complains that the court erred by admitting testimony recounting the children's outcries, by refusing to admit testimony relevant to his contention that the accusations against him were the product of improper questioning, and by refusing to consider his motion to suppress testimony he contends was tainted by improper interview techniques. Finally, appellant urges that his lawyer's failure to request a change of venue and handling of jury selection constituted ineffective assistance of counsel, and in a related point, that the prosecutor was erroneously permitted to define "reasonable doubt" during voir dire. We will overrule the points of error and affirm the convictions.

**BACKGROUND**

Appellant was a first grade teacher at Grape Creek Elementary School. In December 2002, one of his students, K.B., told her mother that she had seen a classmate sitting in appellant's lap at school and that she had also seen a "pink thing" in appellant's lap. K.B. and her mother reported this to the school's principal, Judy Hight. Hight, who had previously admonished appellant not to allow children to sit in his lap, immediately placed appellant on administrative suspension.

The next day, Hight and the school counselor spoke to the other girls in appellant's class. According to Hight, she asked each girl "[h]ow was it going in school this year," was "[a]nything bothering them, troubling them," and "has Mr. Music done anything that made them feel uncomfortable in their classroom." The children recounted sitting in appellant's lap or seeing other students in his lap, but they did not describe any sexually improper conduct. In the next few days, K.B. and other girls in appellant's class were interviewed again at the Children's Advocacy Center,

2

also known as Hope House, in San Angelo. These interviews also produced no further allegations against appellant.

The investigation was not actively pursued again until April 2003. On April 9, N.R., a first grader who was not in appellant's class and who had not been interviewed previously, told her mother that appellant had "put his hands in our pants." This had occurred while N.R. was in appellant's classroom watching a movie as part of the school's "Fun Friday" program. N.R. said that she and several other students, some of whom she named, had been touched by appellant in this manner. N.R.'s father, a San Angelo police officer, reported what his daughter had said and the investigation was reactivated.

One of the other children named by N.R. was H.F, another first grader who was not in appellant's class. On April 11, Detective Ron Sanders arranged to have H.F. interviewed at the advocacy center. H.F. did not describe any improper conduct by appellant during this interview but, as she was going home with her father, she told him that appellant had put his hands in her pants.

During the next few days, other children, including two of the girls who had been interviewed by Hight in December, made outcries to their parents after a story describing the accusations against appellant appeared in the San Angelo newspaper. Eventually, eight indictments were returned against appellant accusing him of engaging in sexual contact by touching the genitals of six minor girls: N.R. (two indictments), K.T. (two indictments), H.F., T.K., T.F., and T.D. Appellant was found guilty as alleged in five of these causes and of the lesser included offense of attempted indecency in two others. Appellant was found not guilty in the eighth cause.

**SUFFICIENCY OF EVIDENCE**

Appellant contends the evidence is legally insufficient to sustain his convictions in six of the seven causes on appeal.[1] In a legal sufficiency review, all the evidence is reviewed in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (legal sufficiency); *Griffin v. State*, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981) (legal sufficiency).

### *B-03-0559-S and B-03-563-S*

In these causes, appellant was convicted of engaging in sexual contact with K.T. on or about October 15 and November 1, 2002. K.T. was in appellant's first grade class during the 2002-2003 school year. K.T. testified that appellant would turn off the lights each time they watched a movie in class. Appellant would then call her over to him, put her in his lap, and put his hands in her pants. K.T. said that appellant "put it [his hand] from the back" then went "[t]o the front." She said appellant's hand would be inside her underwear and that he touched her where she goes "tinkle." K.T. testified that such touching happened several times, and that she saw appellant do the same thing to other girls.

K.T. was one of the girls interviewed by Principal Hight and at Hope House in December 2002, and she did not report any improper activity at that time. K.T.'s mother testified that K.T. was not questioned or interviewed further until in April 2003, when she asked her daughter

---

[1] He does not challenge the sufficiency of the evidence in cause number B-03-0562-S, in which the complainant was T.F.

if she had been improperly touched after reading the newspaper story. K.T. began to cry and told her mother that appellant "touched her where she went tee-tee and moved his hand back and forth."

Appellant challenges K.T.'s credibility, citing her failure to make an outcry in December 2002. He also asserts that the evidence does not support a finding that he intended to gratify his sexual desire. We must assume, however, that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Griffin*, 614 S.W.2d at 159 (citing *Jackson*, 443 U.S. at 318-19). A defendant's intent to arouse or gratify his sexual desire can be inferred from his conduct, his statements, and the surrounding circumstances. *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981). Based on the testimony summarized above, a rational trier of fact could find beyond a reasonable doubt that appellant, on two different occasions, touched K.T.'s genitals with the intent to arouse or gratify his sexual desire. Points of error eight and nine are overruled.

### B-03-0561-S

In this cause, appellant was convicted of engaging in sexual contact with T.K. on or about July 15, 2002. T.K. was a first grader during the 2001-2002 school year. Although she was not in appellant's class, she went to his classroom on Fun Fridays. T.K. testified that during the 2002 summer school, appellant called her over to his desk when the other children were outside, hugged her, and "put his hand down my pants and rubbed the top of my private." To show where appellant touched her, T.K. circled the genital area on a drawing of a female child.

5

T.K.'s mother testified that after reading the newspaper story in April 2003, she asked T.K. if she knew appellant. She said T.K.'s eyes "got real big" and she said that she did. When she asked T.K. if appellant had touched her, the child began to cry and pointed to her genitals.

It was undisputed at trial that appellant did not teach summer school in 2002. Appellant argues that it was therefore impossible for him to have touched T.K. in his classroom during summer school as she testified. But considering T.K.'s young age and the fact that she had been in appellant's classroom during Fun Fridays during the 2001-2002 school year, the jury could find beyond a reasonable doubt that appellant touched T.K.'s genitals "on or about" the date alleged. *See Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997). And contrary to appellant's assertion, the jury could also infer from the circumstances that he acted with the intent to arouse or gratify his sexual desire. Point of error eleven is overruled.

### B-03-0564-S

In this cause, appellant was convicted of engaging in sexual contact with T.D. on or about October 15, 2002. T.D. was a very reluctant witness, but she indicated that when she went to appellant's desk to show him her coloring, he put her in his lap, put his hands down the back of her pants, and touched her "private parts."

T.D.'s mother testified that she had never heard of appellant before April 2003, when a friend told her about the accusations that had been made. She then asked T.D. if she knew appellant. The child began to cry and said that appellant "would sit her on his lap and rub her private area, which she calls her cookie, through her clothes." T.D. had begun first grade in the fall of 2002.

6

Although she was not in appellant's class, she told her mother that she would go to appellant's room on Fun Fridays.

Appellant asserts that the evidence does not support a finding that he touched T.D. with the requisite intent. We conclude that the jury could reasonably infer that appellant touched T.D.'s genitals with the intent to arouse or gratify his sexual desire. Point of error twelve is overruled.

### B-03-0557-S

In this cause, appellant was indicted for engaging in sexual contact with N.R. on or about November 15, 2002. The jury returned an instructed verdict of not guilty with respect to the charged offense, but convicted appellant of the lesser included offense of attempted indecency with a child by contact.

N.R. testified that she was in the first grade during the 2002-2003 school year and would go to appellant's classroom on Fun Fridays. She said that more than once, appellant held her in his lap with her legs spread apart and put his hands in her pants. She said that appellant's hand "stayed outside" her underwear, that he touched her on the "back part" rather than the "front part," and that he normally touched her "on my hips."

As previously noted, N.R. made an outcry to her mother on April 9, 2003. N.R.'s mother testified that she knew appellant had not returned to school after the semester break, but that she had assumed there was a medical reason. To her knowledge, N.R. had not been questioned about appellant before making her outcry.

Once again, appellant challenges the sufficiency of the evidence with respect to his intent. He also asserts, without further argument, that there is no evidence of an attempt to touch N.R.'s genitals. Considering the evidence in the light most favorable to the verdict, we conclude that the jury could find beyond a reasonable doubt that appellant intended to touch N.R.'s genitals with the intent to arouse or gratify his sexual desire, and that his conduct as described by N.R. constituted an act amounting to more than mere preparation that tended but failed to effect the commission of the intended offense. Point of error seven is overruled.

### B-03-0560-S

In this cause, appellant was indicted for engaging in sexual contact with H.F. on or about October 15, 2002. As in the previous cause, the jury was instructed to return a verdict of not guilty with respect to the charged offense. The jury convicted appellant of the lesser included offense of attempted indecency with a child by contact.

H.F., who was a first grader during the 2002-2003 school year, testified that she would visit appellant's classroom on Fun Fridays. She said that appellant "hopped me around his lap and he bounced me around on his lap when he would put his hands in my pants." She said that appellant put his hand in the back of her pants and that he rubbed "my bottom."

H.F.'s father testified that he was contacted by Detective Sanders on April 10, 2003, and asked to bring his daughter to the advocacy center for an interview. He was told that she did not make any accusations during this interview. While driving home, however, H.F. told him that appellant "put his hands down the back of her shorts or little pants that she was wearing." He said that H.F. "indicated" to him that appellant touched her genitals.

8

Appellant asserts without elaboration that this evidence does not support a finding that he attempted to touch H.F.'s genitals with the requisite intent. We conclude, however, that the jury could find beyond a reasonable doubt that appellant intended to touch H.F.'s genitals with the intent to arouse or gratify his sexual desire, and that putting his hand in H.F.'s pants as described was an act amounting to more than mere preparation that tended but failed to effect the commission of the intended offense. Point of error ten is overruled.

**OTHER EVIDENTIARY ISSUES**

Appellant contends the trial court "erred in refusing to hear [his] motion to exclude witness testimony as incredible." In a related point, appellant contends the court erred by excluding the testimony of Detective Sanders and former assistant district attorney Bryan Clayton regarding what appellant terms the "tainted and leading interrogation of complainants" by Principal Hight.

In each of these causes, appellant filed a motion to suppress the testimony of thirty-four persons, including the six complainants and the adults to whom they made their initial outcries, other children who made accusations against appellant and the adults to whom they made their outcries, Principal Hight and teachers at the elementary school, and a counselor at the Child Advocacy Center. The motion alleged that during her December 2002 interviews of the girls in appellant's class, Hight asked leading questions that "tainted" the children's statements. The motion went on to allege that the April 2003 outcries "seem to have come after multiple interviews with the victims," that "testimony solicited by a suspicious adult cannot be reliable," and that "[a]ll the interviews and outcries that followed were elicited from 6-7 year olds who attend school together, talk, listen to their parent(s) and want to please authority figures."

9

Attached to the motion as an exhibit was a copy of the investigation report filed by Detective Sanders in February 2003. In the report, Sanders stated that he had listened to Hight's tape recorded interviews and that, in his opinion, "Hight asked very leading questions to each child and the questions were to the point that the information obtained can not be used in a criminal investigation." The report went on to state that Clayton, then an assistant district attorney, suggested that the investigation be closed because "the children would still be considered 'tainted' by J. Hight." In none of these interviews did the child make any accusation of criminal conduct by appellant.

The motion to suppress was overruled by the court at a pretrial hearing. The court ruled that it was not authorized "to rule in a pretrial fashion . . . as to the admissibility, credibility or weight of any of this evidence that you're seeking to suppress at this time." The court added, "I find that any evidence of those matters would go to the weight and the credibility of the testimony and would not be suppressible and I'm denying the Motion to Suppress in each of the cause numbers."

Following this hearing, appellant filed a motion in limine asking that "[t]estimony and statements of children 6-8 years of age" not be admitted in evidence until a determination could be made as to whether or not the evidence had been "acquired through leading questions and multiple interviews using questionable techniques." Appellant brought the motion to the attention of the court following his arraignment.[2] The court declined to rule on the motion in limine, suggesting that appellant raise his objections when the witnesses were called to testify.

---

[2] Appellant was arraigned by the Honorable Barbara Walther, who was not otherwise involved in the trial of these causes.

10

Later, the State filed a motion in limine asking that appellant be ordered to approach the bench for a ruling before referring in any manner to "potential expert testimony or expert witnesses intended to be used by the defense, including . . . Bryan Clayton [and] Ron Sanders." The State indicated in the motion that it "intends to challenge the ability of these witnesses to testify in the manner the defense would offer them." The court explained its ruling granting the motion:

> I'm not ruling on . . . any evidence relating to what was said to those children previously, what interviews were done and what was said in those interviews and how the questions were asked. . . . What I'm being asked to rule on is, you saying that these two witness will say: We believe those were tainted interviews.

> Now, if you put on evidence . . . that [the children's] testimony resulted from a multiple set of facts that convinced them to say that, you can put on all the facts you are able to by way of proper evidence and then argue to the Jury that all those facts amounted to tainting those children's testimony . . . .

> But I don't think you can call in a D.A. or a Sheriff's Deputy who at some time during the investigation determined in their own mind that that had happened. They are becoming fact-finders at that moment and invading the province of the Jury or being improperly expert witnesses.

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *Villareal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). Appellant cites no authority and we are not otherwise persuaded that the trial court abused its discretion by refusing, at a pretrial hearing, to suppress all the evidence against him solely on the basis of the opinions of a police officer and an assistant district attorney, expressed early in the investigation, that some of the evidence had been "tainted" by leading questioning.

Called by the defense at trial, Sanders testified that he was assigned to investigate the Grape Creek allegations in December 2002. He said that he listened to Hight's recorded interviews,

11

witnessed the initial interviews at Hope House, and personally spoke to several children and their parents. He testified that none of the children made an "outcry of any type of sexual misconduct," and that he ended his investigation after consulting with the district attorney's office.[3]

It was appellant's defensive theory that the allegations made by the six complainants in these causes were the result of leading questioning, repeated interviews, and community hysteria. The trial court allowed appellant to offer evidence in support of this theory, but properly refused to allow Sanders to testify to his opinion (and Clayton's), expressed in the investigation report, that the complainants' allegations were "tainted." Expert testimony that a person's allegations are the result of manipulation or fantasy is inadmissible.[4] *Schutz v. State*, 957 S.W.2d 52, 70 (Tex. Crim. App. 1997). Based on the properly admitted evidence describing the course of the investigation, the jury was just as capable as the experts of drawing the conclusion involved. *See id*. at 71. Points of error two and three are overruled.

Next, appellant urges that the trial court erred by admitting the complainant's outcry statements "when it refused to hear evidence that the actions of the . . . principal tainted the children . . . causing non-credible outcry statements." Before admitting the outcry testimony, the court conducted the required reliability hearings. *See* Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b)(2) (West 2005). Appellant asserts that at these hearings, the court "should have heard a full explanation of the tainted interview techniques."

---

[3] Clayton was not called as a witness. The record does not indicate whether Sanders and Clayton were at the time of trial still of the opinion that the incriminating evidence was tainted.

[4] Appellant suggests in his brief that Sanders and Clayton were experts with respect to criminal investigations.

Appellant does not refer us to any article 38.072 hearing in the record at which he sought to offer, but the court refused to admit, "a full explanation of the tainted interview techniques." The court's refusal to admit evidence of Sanders's and Clayton's opinions *before the jury* does not reflect on the court's conduct of the reliability hearings or the admissibility of the outcry testimony. Point of error four is overruled.

Finally, appellant complains that the trial court erroneously disallowed proffered opinion testimony by a defense expert. The expert in question was Dr. Richard Wall, a clinical psychologist in private practice and a clinical professor at Texas Tech Medical School in Lubbock. Following a hearing at which Wall's areas of expertise were established, the court ruled that he would be allowed to testify that: (1) children are easily manipulated, (2) children seek to please adults when questioned, and (3) multiple interviews can have the effect of influencing the answers of children. The court refused to allow Wall to express an opinion as to whether the children in these causes "had been, in fact, influenced . . . or that their testimony was the result of any pressure or influence or manipulation, or any opinion that the interview technique, including . . . the frequency of the questions . . . that these techniques were inappropriate." The court also ruled that Wall would not be allowed to discuss the specifics of one study in which three out of ten children had given false stories of abuse following repeated interviews. The court was not convinced that the study in question was reliable, and held that in any event the probative value of the study was substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403, 702.

The court properly excluded expert testimony that the complainants' allegations were the result of manipulation, peer pressure, and improper interview techniques. *Schutz*, 957 S.W.2d

13

at 70. Any abuse of discretion in the ruling excluding the details of the one particular study was harmless in light of Wall's testimony that "studies demonstrate that adults and children, but children more than adults, respond to multiple interviews about the same subject. There are significant number of false statements made under multiple interviews than there are made under a single or two interviews." *See* Tex. R. App. P. 44.2(b). Point of error five is overruled.

## JOINDER

Appellant contends the trial court erred by overruling his request for a severance and permitting the State to consolidate the eight indictments for trial. A defendant may be prosecuted in a single action for all offenses arising out of the same criminal episode. Tex. Pen. Code Ann. § 3.02(a) (West 2003). "Criminal episode" means the commission of two or more offenses, regardless of the number of persons harmed, if the offenses are committed pursuant to a common scheme or plan, or if the offenses are the repeated commission of the same or similar offenses. *Id*. § 3.01. The eight indictments alleged the same statutory offense committed against six different complainants under similar circumstances over a four-month period. The offenses clearly arose out of the same criminal episode. *See Diaz v. State*, 125 S.W.3d 739, 742 Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

Although defendants generally have a mandatory right to sever offenses that have been joined for trial pursuant to section 3.02, this right does not apply to prosecutions for indecency with a child unless the trial court determines that the defendant or the State would be unfairly prejudiced by a joinder. Tex. Pen. Code Ann. § 3.04(c) (West 2003). We review the court's denial

14

of a severance pursuant to section 3.04(c) for an abuse of discretion. *Salazar v. State*, 127 S.W.3d 355, 365 Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

Appellant argues that the nature of these offenses and the hostile climate in the community as reflected by the attitudes of prospective jurors during voir dire demonstrate that the joinder of these causes for trial resulted in unfair prejudice. He also argues that when confronted with eight indictments involving six complainants, the jury was more likely to overlook the weaknesses in the State's case and convict him simply on the basis of the number of accusations.

Under the terms of section 3.04(c), the mere fact that a defendant is accused of multiple acts of indecency with a child arising out of the same criminal episode does not entitle him to a severance; that is, unfair prejudice cannot be presumed simply from the nature or number of the charges. *See Diaz*, 125 S.W.3d at 742. Appellant does not explain how the alleged hostile climate in the community would have been mitigated if these indictments had been tried separately rather than together. No abuse of discretion is shown. Point of error one is overruled.

## EFFECTIVENESS OF COUNSEL

Appellant's remaining points of error complain of errors and omissions by his trial counsel that, in appellant's view, demonstrate ineffective assistance. To prevail on this claim, appellant must show that counsel made such serious errors that he was not functioning effectively as counsel and thereby prejudiced appellant's defense to such a degree that he was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 771-72 (Tex. Crim. App. 1999); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). We must indulge a strong presumption that counsel's conduct fell within the wide range of

reasonable professional assistance. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To overcome this presumption, the allegations of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

Appellant contends that counsel was ineffective because he did not move for a change of venue. He argues that "no reasonable strategy decision can justify choosing to go to trial where community sentiment is inflamed and opinions are predisposed toward guilt" due to pretrial publicity and small-town gossip. Appellant points out that sixty-five panelists, rather than the usual forty-two, were called for jury selection, and that several panelists made statements during voir dire indicating a familiarity with the allegations and a predisposition to believe appellant guilty. In related points of error, appellant urges that counsel was ineffective because he failed to preserve for the record the names of venire members who indicated that they would vote to convict without hearing any evidence or would require less than proof beyond a reasonable doubt.

During voir dire, both the prosecutor and defense counsel discussed at length the presumption of innocence and the State's burden of proof beyond a reasonable doubt. During defense counsel's voir dire, he acknowledged that all of the panelists had indicated, in answer to the prosecutor's questions, that they understood "that as we sit here today, right now, if you had to vote, your vote would have to be not guilty." But, counsel continued, "I get the feeling some of you wouldn't vote not guilty even not having heard any evidence, just on the theory that: Well, he's here, he got indicted, must have happened. Okay. And I see some heads going like that." Later, as he concluded his voir dire, counsel acknowledged certain unidentified panelists who, "correct me if I'm

16

wrong, you would just need a little bit; you wouldn't need beyond a reasonable doubt. Is that safe to say?" The record indicated that two jurors nodded in agreement.

Although counsel did not expressly identify for the record the panelists who admitted a predisposition to vote guilty, it is clear from the record that counsel was well aware of the panelists who were challengeable by the defense for this or any other reason. Following group voir dire, twenty-six panelists were questioned privately because they had indicated that they were acquainted with potential witnesses, had formed an opinion about appellant's guilt, had an objection to the range of punishment, or would otherwise find it difficult to impartially follow the law.[5] Defense counsel challenged seventeen of these panelists for cause, and all of the challenges were granted. The remaining nine panelists were peremptorily struck by either the defense or the State, or were outside the strike zone.

The record reflects that defense counsel was concerned about the potential for jury bias arising from pretrial publicity and used his challenges and peremptory strikes in a manner calculated to protect appellant's rights. Appellant does not contend and the record does not reflect that any person even arguably objectionable to the defense served on the jury. If we were to agree—and we do not—that the failure to request a change of venue was in itself ineffectiveness, there is no basis in the record for concluding that it resulted in an unfair trial. Points of error six, nineteen, and twenty are overruled.

Appellant's remaining ineffectiveness points also relate to jury selection. Appellant urges that counsel should have objected to group questioning regarding the panelists' knowledge of

_____

[5] A twenty-seventh panelist was questioned privately at his request regarding a health issue.

17

the facts of this case and their opinion of appellant's guilt, and that counsel should have requested individual voir dire. Implicit in this contention is the assumption that appellant was entitled to individual voir dire. In fact, the jury selection process was conducted in the manner prescribed for noncapital cases. *See* Tex. Code Crim. Proc. Ann. art. 35.17(1) (West 1989); *see also Martinez v. State*, 867 S.W.2d 30, 35 (Tex. Crim. App. 1993) (individual voir dire available only when State seeks death penalty). Point of error fifteen is overruled.

Appellant contends that counsel should not have permitted the prosecutor to ask "rehabilitation questions" of panelists who said that they had formed an opinion regarding appellant's guilt. He relies on article 35.16(a)(10), which provides that when a venire member states that he has an established conclusion regarding the defendant's guilt or innocence that will influence his verdict, "he shall be discharged without further interrogation by either party or the court." Tex. Code Crim. Proc. Ann. art. 37.16(a)(10) (West 1989). The record citations provided by appellant do not reflect a violation of the statute. Point of error sixteen is overruled.

Appellant asserts that counsel was ineffective because he did not object to the State "vouching for its witnesses" and "placing jurors in the shoes of the putative victims" during voir dire. Appellant refers us to a portion of the State's voir dire in which the prosecutor said, "I'm going to be asking you all about your first sexual experience. So just be thinking about it so that when I call on you, you will be prepared." Immediately after saying this, the prosecutor explained, "I'm obviously just kidding. . . . But the thing is, that's what some of these children are going to be called upon to do, and they're going to be called upon to do it in front of twelve strangers in a courtroom.

18

Can everyone relate to that now, relating how you felt when I said that horrible thing, how they may feel when they testify?"

Appellant does not cite authority holding that this was improper voir dire. Even if it was, the prosecutor did not pursue this line of questioning and we are not persuaded that defense counsel's failure to object rendered his performance during voir dire, much less his performance during the trial as a whole, ineffective. Points of error thirteen and fourteen are overruled.

In two points of error, appellant contends the court erred by permitting the prosecutor to define "reasonable doubt" for the jury panel, and that defense counsel was ineffective for failing to object to it. Appellant relies on the opinion in *Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000), in which the court overruled a prior holding by which trial courts were required to give a prescribed definition of "beyond a reasonable doubt" in their jury charges. The *Paulson* court added that "the better practice is to give no definition of reasonable doubt at all to the jury." *Id*.

These points refer to the prosecutor's statement in reference to reasonable doubt that the "operative word there [is] reasonable. A doubt that is based on common sense and reason from some—from the evidence you hear." This is a far cry from the six-paragraph jury instruction that had been mandated in *Geesa v. State*, 820 S.W.2d 154, 162 (Tex. Crim. App. 1991), and was disapproved in *Paulson*. Moreover, appellant cites no authority holding that it is impermissible or contrary to "the better practice" for the parties to discuss the concept of proof beyond a reasonable doubt with prospective jurors during voir dire. Neither error nor ineffectiveness of counsel is shown. Points of error seventeen and eighteen are overruled.

19

When, as in these causes, the ineffectiveness issue was not raised in a motion for new trial, the record on direct appeal will seldom adequately reflect the motives behind trial counsel's actions. *Mallett*, 65 S.W.3d at 63. Absent a record showing counsel's reasons for the actions he took and the decisions he made, this Court will not second-guess counsel's decision to go to trial in Tom Green County or his conduct of jury voir dire. On the record before us, appellant has failed to overcome the presumption that counsel's trial performance as a whole was within the wide range of reasonable professional assistance.

The judgments of conviction are affirmed.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:   September 22, 2005

Do Not Publish