# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00712-CR

**Thomas Aleshire, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. D-1-DC-06-900220, HONORABLE FRED A. MOORE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Thomas Aleshire guilty of indecency with a child by contact and assessed his punishment at eight years' imprisonment. *See* Tex. Penal Code Ann. § 21.11 (West 2003). In his only point of error, appellant contends that the evidence is factually insufficient to sustain the guilty verdict. We find the evidence to be sufficient and affirm the judgment of conviction.

When there is a challenge to the sufficiency of the evidence to sustain a criminal conviction, the question presented is whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (legal sufficiency); *Griffin v. State*, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981) (legal sufficiency); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000) (factual sufficiency). In a factual sufficiency review, all the evidence is considered equally, including the testimony of

defense witnesses and the existence of alternative hypotheses. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). Due deference must be accorded the fact finder's determinations, particularly those concerning the weight and credibility of the evidence, and the reviewing court may disagree with the result only to prevent a manifest injustice. *Johnson*, 23 S.W.3d at 9; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). The evidence will be deemed factually insufficient if the evidence supporting the verdict is so weak as to make the finding of guilt clearly wrong or manifestly unjust, or if the verdict is against the great weight and preponderance of the available evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Johnson*, 23 S.W.3d at 11.

In September 2005, the complainant, C.A., who was then nine years old, was living in the Salvation Army family dorm with her mother and younger sister. There, they met and befriended appellant and his son, who were also living in the dorm. Eventually, both families left the dorm and, by February 2006, they were sharing a three bedroom duplex apartment. C.A. and her sister slept in one bedroom, their mother slept in another bedroom, and appellant and his son shared the third bedroom. C.A.'s mother was employed, and she generally returned home at around 7:30 in the evening. Appellant, who was recovering from surgery and walked with the aid of a cane, stayed at the apartment, watched the children after school, and prepared dinner.

On the afternoon of February 13, appellant walked with C.A. and her sister to a nearby convenience store so the girls could buy an after-school snack. C.A. testified that she had had a bad day at school; she had failed a spelling test and had disliked lunch. She and appellant began to argue as they walked home. C.A. could not remember the reason for the argument, but she

said that it was probably about the mess in her room. When they got back to the apartment, appellant did not allow C.A. to eat her snack and ordered her to go to her room to "think about what I did."

C.A. and her sister had bunk beds. C.A. slept in the upper bunk, and she was sitting there when appellant entered the room. Appellant told C.A. that she should not argue with adults. C.A. testified that after they finished talking, appellant "lifted up my shirt and he put his mouth on my private." She explained that she was referring to her breast. After doing this, appellant told C.A. that she could eat her ice cream and left the room.

C.A.'s mother testified that when she got home from work that day, C.A. asked to speak with her privately. C.A. was unable to tell to her mother about the incident orally, so she wrote a note describing what appellant had done. C.A.'s mother suggested to C.A. that it might have been an accident; that perhaps appellant had meant merely to blow a "raspberry" on C.A.'s stomach. But, she testified, "[C.A.] said she was certain. And she showed me on my arm what it was that he had did specifically." She said that C.A. "put her mouth on my arm and made a suckling motion." C.A.'s mother slept that night on the floor of her daughters' bedroom, and she called the police the following morning after taking the girls to school.

Shana Hill, a Child Protective Services investigator, testified that she went to the apartment on February 15 to speak to C.A.'s mother. Appellant approached her outside the apartment, and she told him that she was there to investigate the allegation that he had sexually abused C.A. Appellant told Hill that "he should be able to confront the child face to face." Hill told appellant that this "was not a good idea." Appellant waited outside while Hill spoke to C.A.'s mother inside the apartment. Later, after appellant refused to leave the apartment, Hill took C.A. and her mother and sister to a shelter to spend the night.

3

Kiara Alvarez, a forensic interviewer at the Center for Child Protection, testified that she interviewed C.A. at the center on February 22. In addition to recounting the incident on February 13, C.A. told Alvarez that appellant had often touched and rubbed her breast when tucking her into bed at night. C.A. told Alvarez that she had spoken to her mother about this, but her mother testified that this was the first time she had heard of it. The court instructed the jury to consider this testimony for the limited purposes allowed by article 38.37. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2 (West Supp. 2007).

Austin Police Officer William Dupre testified that he interviewed appellant at the police station, and a videotape of this interview was introduced in evidence. Dupre described appellant as "very polite and very cooperative. He showed up on time even though he had some physical ailments. And he was very straightforward." During his interview with Dupre, appellant denied the allegations made against him. Dupre also went to the apartment and measured the bunk beds. The upper bunk was sixty-four inches high. Appellant is six feet, five inches tall, and Dupre was of the opinion that he was tall enough to have placed his mouth on C.A.'s breast as he stood by the bed and she sat in the upper bunk.

The State's final witness was Dr. William Carter, a psychologist in private practice with expertise in the area of child sexual abuse. Carter described what he referred to as the "process" of child sexual abuse, beginning with selection of the victim by the perpetrator and ending with the victim's outcry. Carter, who had not spoken to C.A., was asked a series of hypothetical questions based on the facts of this case and explained how these facts fit into his theory of the child sexual abuse process.

Carter also described the factors that he considered in determining the validity of a child's outcry. These factors included: whether the child volunteered the information or was responding to questions from an adult; whether the details related in the outcry are consistent with what normally occurs in sexual abuse; the child's emotional affect; whether the child's account remains fundamentally consistent over time; and whether the child has a motive to fabricate.

The defense called no witnesses. In his argument, defense counsel reminded the jurors that they had heard from appellant in the form of his videotaped statement to the police.

Appellant argues that C.A.'s trial testimony did not satisfy Carter's validity standards. He notes that she testified on direct examination that her mother arrived home at the usual time on February 13, around 7:30 P.M., and that she immediately spoke to her mother about the alleged incident. On cross-examination, however, C.A. said that her mother got home early that day, around 5:00 p.m., and that she did not speak to her mother about the incident until after they ate dinner. Appellant also notes that C.A. admitted that she did not particularly like appellant, and that she had argued with him a few hours before making her outcry. The State responds that the inconsistencies in C.A.'s testimony involved unimportant details, and that C.A.'s description of appellant's abusive behavior remained consistent. The State also points out that C.A. volunteered her outcry without any prompting from her mother, who testified that she had always trusted appellant.

Appellant also claims that it was physically impossible for him to have placed his mouth on C.A.'s breast as she described. According to C.A.'s testimony, she was sitting in the upper bunk with her back to the wall when the act took place. Appellant claims, without citation to record evidence, that C.A.'s torso would have been two or three feet behind the front edge of the bed, which the evidence showed was sixty-four inches from the floor. Appellant asserts that he would have had

5

to have been over seven feet tall to have placed his mouth on C.A.'s breast while standing beside the bed, and that it was physically impossible for him to have used the bunk bed's ladder to get closer to C.A. The State responds by pointing to the investigating officer's testimony that he had determined that it was possible for appellant to have touched C.A. in the manner she described.

It was the jury's duty to determine the credibility of C.A.'s testimony and its weight relative to the other evidence. This Court must defer to the jury's determination, and we may not order a new trial merely because we might disagree with the verdict. *Watson*, 204 S.W.3d at 414. Viewing all the evidence in a neutral light, we do not find the State's evidence to be so weak as to make the guilty verdict clearly wrong or manifestly unjust, nor do find the jury's verdict to be against the great weight and preponderance of the contrary evidence or factors cited by appellant. *See id*. at 414-15. We therefore overrule appellant's challenge to the factual sufficiency of the evidence.

The judgment of conviction is affirmed.

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed: January 31, 2008

Do Not Publish