ACCEPTED
03-15-00445-CR
7847963
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/16/2015 3:16:32 PM
JEFFREY D. KYLE
CLERK

**No. 03-15-00445-CR**

In the
**COURT OF APPEALS**
For the
**THIRD SUPREME JUDICIAL DISTRICT**
at Austin

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/16/2015 3:16:32 PM
JEFFREY D. KYLE
Clerk

———————————————————————

On Appeal from the 426th Judicial District Court of
Bell County, Texas
Cause Number 73,714

———————————————————————

**RONICESHA CHERRON WEARREN, Appellant**
*v.*
**THE STATE OF TEXAS, Appellee**

———————————————————————

**APPELLANT'S BRIEF**

———————————————————————

*Counsel for Appellant*
*Ronicesha Cherron Wearren*

**KRISTEN JERNIGAN**
ATTORNEY AT LAW
STATE BAR NUMBER 90001898
207 S. AUSTIN AVE.
GEORGETOWN, TEXAS 78626
(512) 904-0123
(512) 931-3650 (FAX)
Kristen@txcrimapp.com

**ORAL ARGUMENT REQUESTED**

## IDENTIFICATION OF PARTIES

Pursuant to Texas Rule of Appellate Procedure 38.1, a complete list of the names of all interested parties is provided below so the members of this Honorable Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of this case.

**Appellant:**

Ronicesha Cherron Wearren

**Counsel for Appellant**:

Joseph C. Weiner (at trial)
P.O. Box 298
Belton, Texas 76513

Kristen Jernigan (on appeal)
207 S. Austin Ave.
Georgetown, Texas 78626

**Counsel for Appellee, The State of Texas:**

Henry Garza
Bell County District Attorney

Anne Potts-Jackson
Shelly Stimple
Assistant District Attorneys
1201 Huey Road
P.O. Box 540
Belton, Texas 76513

**Trial Court Judge:**

The Honorable Fancy H. Jezek

# TABLE OF CONTENTS

IDENTIFICATION OF PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . vii

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

ARGUMENT & AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

> 1. *The evidence is insufficient to support Appellant's conviction because the State failed to show the fair market value of the property allegedly stolen.*
>
> 2. *The evidence is insufficient to support Appellant's conviction because the State failed to prove Appellant had the intent to deprive anyone of the allegedly stolen property where it appeared the property had been abandoned.*

PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF WORD COUNT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# INDEX OF AUTHORITIES

## CASES

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) . . . . . . . . . . .8, 10, 11, 15

*Griffin v. State*, 614 S.W.2d 155 (Tex. Crim. App. 1981) . . . . . . . . . . . . . . . 12, 15

*Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . 8, 10

*Ingram v. State*, 261 S.W.3d 749 (Tex. App.—Tyler 2008) . . . . . . . . . . . . . . . . 11

*Jackson v. Virginia*, 443 U.S. 307 (1979) . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 11, 15

*King v. State*, 174 S.W.3d 796 (Tex. App.—Corpus Christi 2005) . . . . . . . . .11, 15

## STATUTES AND RULES

TEX. PENAL CODE § 31.03(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

TEX. PENAL CODE § 31.08(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

TEX. R. APP. P. 38.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TEX. R. APP. P. 39.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rule of Appellate Procedure 39.1, Appellant requests oral argument in this case.

**No. 03-14-00445-CR**

In the
**COURT OF APPEALS**
For the
**THIRD SUPREME JUDICIAL DISTRICT**
at Austin

_____

On Appeal from the 426th Judicial District Court of
Williamson County, Texas
Cause Number 73,714

_____

**RONICESHA CHERRON WEARREN, Appellant**
*v.*
**THE STATE OF TEXAS, Appellee**

_____

**APPELLANT'S BRIEF**

_____

**STATEMENT OF THE CASE**

On December 17, 2014, Appellant was indicted for the felony offense of theft of property of the value of $1,500.00 or more but less than $20,000.00. (CR: 4-6). On June 9, 2015, a jury found Appellant guilty and assessed Appellant's punishment at fourteen months confinement in the Texas Department of Criminal Justice – State Jail Division. (CR: 50). The Court also ordered restitution in the amount of $4,000.00. (CR: 50). Appellant timely filed Notice

1

of Appeal on June 11, 2015. (CR: 36).[1] This appeal results.

## STATEMENT OF FACTS

At trial, Juan Rodriguez testified that he owns some land in Killeen on which he plans to build a house in the future. (RR5: 23). According to Rodriguez, the property is in a subdivision neighborhood with houses on either side. (RR5: 23). On the property were twenty to twenty-five fence panels which Rodriguez got in trade from a job he did for a friend. (RR5: 24). Specifically, Rodriguez painted and repaired a vehicle in exchange for the fence panels. (RR5: 25). Rodriguez estimated the value of his work between $3,000.00 and $3,500.00. (RR5: 26). Rodriguez told the jury that he believed the value of the fence panels to be over $3,000.00 based on quotes he got from Lowe's and Home Depot. (RR5: 26-27). However, Rodriguez admitted that he did not know whether the fence panels he received in trade were used or not. (RR5: 30). Rodriguez stated that the fence panels were taken some time in November of 2014, but he could not be sure of the date since he would go periods of time without visiting the property. (RR5: 39). It was Rodriguez's contention that when the fence panels were taken from his property, they were laying 160 feet from the street. (RR5: 31). On cross-examination, Rodriguez acknowledged

---

[1] Appellant filed a *pro se* Notice of Appeal on June 11, 2015. (CR: 36). Once the undersigned was appointed by the Court, Notice of Appeal was also filed on June 16, 2015. (CR: 42).

that he did not have a "no trespassing" sign on his property and that he does not live on the property. (RR5: 51-52). Rodriguez acknowledged further that he actually got the fence panels before he started repairing and painting his friend's vehicle. (RR5: 54). Rodriguez admitted that he did not get a written receipt for the fence panels and the quotes he received from Home Depot and Lowe's were for new fence panels, not used fence panels. (RR5: 56). Rodriguez agreed that there was no concrete slab poured or any framework for a home on his property, nor was there a mailbox. (RR5: 57-58).

Jason Davis with the Bell County Sheriff's Department told the jury that on November 23, 2014, he was on patrol and dispatched to an address in Killeen which was "not really a neighborhood," but "lots" which ranged in size from half of an acre to five acres. (RR5: 71). When he arrived at the address, Rodriguez informed him some fence panels had been taken. (RR5: 73-74). Davis took some notes, which included Rodriguez's estimate of the value of the fence panels. (RR5: 75).

Damien Deville told the jury that he is employed at Centex Scrap and Metal which is a recycling center for materials such as metal, plastic, copper and aluminum. (RR5: 85-86). Deville stated that on November 18, 2014, Appellant, a regular customer, brought in some "typical just flat-out tin." (RR5: 92).

3

Appellant, who showed her ID and gave Deville her name and address, dropped off some metal fence panels. (RR5: 98). Deville offered that he had "no idea" whether the value of the items was the same if they were used for scrap or whether they were used in their natural state. (RR5: 99). On cross-examination, Deville related that Appellant was a regular customer, like many others, who made a living by responding to calls from Centex and Scrap and Metal to collect abandoned materials and bring them for recycling. (RR6: 9). After Appellant dropped off the fence panels on November 18, 2014, she returned several times to turn in materials for recycling, even after the Sheriff's Department contacted Centex about Rodriguez's claim of stolen fence panels. (RR6: 11). Deville stated that Appellant is "still a valued customer." (RR6: 13).

Justin Kelly, an investigator with the Bell County Sheriff's Department, told the jury that after Rodriguez's initial report, he traveled to Centex on November 24, 2014. (RR6: 25). While he was there, Appellant arrived with some materials to recycle. (RR6: 29). Kelly asked Appellant whether she had sold fence panels to Centex and Appellant replied that she had and gave Kelly the location where she found the panels. (RR6: 29-30). Appellant told Kelly that she thought the fence panels had been abandoned and that she scraps metal for a living. (RR6: 31). Kelly asked Appellant if she would show him where she

4

found the panels and she agreed so Kelly followed her to the location. (RR6: 32). Once there, Appellant voluntarily showed Kelly where on the property she found the fence panels and explained she thought they were abandoned. (RR6: 40-41). Some time later, Kelly contacted Rodriguez and asked him if he wanted to pursue charges and he replied that he did. (RR6: 46). Kelly stated that he contacted Lowe's to determine the replacement value of the fence panels and determined it was $4,000.00. (RR6: 50). On cross-examination, Kelly agreed that there was no mailbox at the vacant lot where the fence panels were located. (RR6: 53). In addition, there was no sign that the property belonged to Rodriguez or anyone else. (RR6: 53). Kelly admitted that he never contacted the person who gave Rodriguez the fence panels in trade to determine the value of the fence panels. (RR6: 54). Kelly admitted further that he had no idea as to the condition of the fence panels on November 18, 2014. (RR6: 54). Kelly acknowledged that Appellant was very cooperative when he spoke to her and that she readily admitted she obtained the fence panels but thought they were abandoned. (RR6: 55). Kelly acknowledged further that it appeared the lot where Appellant obtained the fence panels was vacant. (RR6: 57). Finally, Kelly agreed that he never obtained any receipts or documentation to show how much the value of the fence panels in question actually was. (RR6: 60). At the close of Kelly's testimony,

5

the State rested its case-in-chief.   (RR6: 62).

Appellant testified that she is a former United States Coast Guard member and lives in Killeen with her four adopted children.   (RR6: 64).   Appellant related to the jury that she grew up in a home where her family would go "junking" and would find items to sell.   (RR6: 65).   At the time of trial, Appellant made her living "scrapping" by finding free items on Craigslist, finding free items on trash days, and picking up items Centex alerted her to.   (RR6: 66).   On November 18, 2014, Appellant went to the area of Creek's Place because it was their trash day and because she had picked up recyclable materials from that area previously, based on Craigslist advertisements.   (RR6: 70).   Appellant stated that she saw some of the fence panels near the road so she stopped.   (RR6: 71). There was no home on the property, no signs, and the only fences she saw belonged to neighboring houses.   (RR6: 72).   There was no mailbox and nothing to indicate the property was owned by anyone so Appellant thought it was a dumpsite.   (RR6: 72).   Appellant decided to load the fence panels in her van and while she did so, a school bus pulled up to drop off children after school and a neighbor waved to her.   (RR6: 73).   Appellant then drove to Centex, gave Deville her ID, and helped unload the fence panels.   (RR6: 74).   Appellant could not fit all of the fence panels in her van on her first trip, so Appellant went back to

6

the lot and loaded the rest of the fence panels. (RR6: 75). She then returned to Centex and repeated the process. (RR6: 78). On November 25, 2014, she voluntarily spoke to Investigator Kelly and offered to take him to the location where she found the fence panels. (RR6: 78). Kelly never told Appellant she could speak to an attorney and never indicated to Appellant that he considered the items stolen or that she was under arrest. (RR6: 78). Between November 25, 2014, and the time of trial, June 9, 2015, Appellant continued doing business with Centex and had been there over 200 times. (RR6: 79). At the close of Appellant's testimony, the defense rested its case-in-chief. (RR6: 94).

## ISSUES PRESENTED

1.  The evidence is insufficient to support Appellant's conviction because the State failed to show the fair market value of the property allegedly stolen.

2.  The evidence is insufficient to support Appellant's conviction because the State failed to prove Appellant had the intent to deprive anyone of the allegedly stolen property where it appeared the property had been abandoned.

## SUMMARY OF THE ARGUMENT

Appellant's first point of error should be sustained because the State failed to show the fair market value of the property allegedly stolen where that value was readily ascertainable. Appellant's second point of error should be sustained because the State failed to show Appellant had the requisite intent to deprive

7

anyone of the property allegedly stolen where it appeared the property had been abandoned.

**ARGUMENT & AUTHORITIES**

**I.** *The evidence is insufficient to show the fair market value of the property allegedly stolen.*

Appellant's first point of error should be sustained because the State failed to show the fair market value of the property allegedly stolen where that value was readily ascertainable. The Court of Criminal Appeals has held that the legal sufficiency standard set out in *Jackson v. Virginia,* 443 U.S. 307, 320 (1979), is the only standard that a reviewing court should apply when determining the sufficiency of the evidence. *Brooks v. State*, 323 S.W.3d 893, 896 (Tex. Crim. App. 2010). When reviewing the legal sufficiency of the evidence, an appellate court views the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 320; *Brooks*, 323 S.W.3d at 896.

Although juries are permitted "to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial," a jury is "not permitted to draw conclusions based on speculation." *Hooper v. State*, 214 S.W.3d 9, 15-16 (Tex. Crim. App. 2007).

The value of property in theft prosecutions is proven by:

(1) the fair market value of the property at the time and place of the offense, or

(2) if the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the theft.

TEX. PENAL CODE § 31.08(a).

In the present case, Rodriguez stated that he received the fence panels from a friend in trade for some work done on a car. Rodriguez admitted that he did not know whether the fence panels he received in trade were used or not. Rodriguez admitted that he did not get a written receipt for the fence panels and the quotes he received from Home Depot and Lowe's were for new fence panels, not used fence panels.

Investigator Kelly admitted that he never contacted the person who gave Rodriguez the fence panels in trade to determine the value of the fence panels. Kelly admitted further that he had no idea as to the condition of the fence panels on November 18, 2014. Finally, Kelly agreed that he never obtained any receipts or documentation to show how much the value of the fence panels in question actually was.

A simple phone call by Kelly to the person who gave Rodriguez the fence panels would have determined whether the fence panels were new or used and the

value of the panels. However, the State did not bother to obtain that information to Appellant's detriment. Section 31.08(a) of the Texas Penal Code is very clear that the State is required to prove the fair market value of the property allegedly stolen and can rely on replacement value only "*if the fair market value of the property cannot be ascertained.*" TEX. PENAL CODE § 31.08(a). Clearly, the fair market value could have been ascertained; the State simply chose not to do so.

The State did not prove the fair market value of the property allegedly stolen when it was readily ascertainable, and instead, offered evidence of replacement value. This is not permitted under the statute. *See* TEX. PENAL CODE § 31.08(a). Further, by not offering any evidence as to the fair market value of the fence panels, the State failed to prove an essential element of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 320; *Brooks*, 323 S.W.3d at 896. The jury's finding of value of over $1,500.00 is nothing more than speculation, which is forbidden. *See Hooper v. State*, 214 S.W.3d 9, 15-16 (Tex. Crim. App. 2007). Accordingly, Appellant's first point of error should be sustained.

**II.**   *The evidence is insufficient to show Appellant had the requisite intent to deprive anyone of the property allegedly stolen where the property appeared abandoned.*

Appellant's second point of error should be sustained because there is no evidence that Appellant intended to deprive anyone of the property allegedly stolen. As discussed above, The Court of Criminal Appeals has held that the legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307, 320 (1979), is the only standard that a reviewing court should apply when determining the sufficiency of the evidence. *Brooks v. State*, 323 S.W.3d 893, 896 (Tex. Crim. App. 2010). When reviewing the legal sufficiency of the evidence, an appellate court views the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 320; *Brooks*, 323 S.W.3d at 896. To prove the offense of theft, the State is required to prove that the person charged had the requisite intent to deprive an owner of his property beyond a reasonable doubt. TEX. PENAL CODE § 31.03(a).

It "is possible to take possession of abandoned property without committing a theft or intending to commit a theft." *Ingram v. State*, 261 S.W.3d 749, 754 (Tex. App.—Tyler 2008). Intent to deprive is determined from the words and acts of the accused. *King v. State*, 174 S.W.3d 796, 810 (Tex. App.—Corpus

11

Christi 2005), *citing Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981).

In the instant case, Appellant testified that on November 18, 2014, she was "scrapping" and went to the area of Creek's Place because it was their trash day. She also went there because she had picked up recyclable materials from that area previously based on Craigslist advertisements. Appellant stated that she saw some of the fence panels near the road so she stopped. There was no home on the property, no signs, and the only fences she saw belonged to neighboring houses. There was no mailbox and nothing to indicate the property was owned by anyone so Appellant thought it was a dumpsite. Appellant decided to load the fence panels in her van and while she did so, a school bus pulled up to drop off children after school and a neighbor waved to her. Appellant then drove to Centex, gave Deville her ID, and helped unload the fence panels. Appellant could not fit all of the fence panels in her van on her first trip, so Appellant went back to the lot and loaded the rest of the fence panels. She then returned to Centex and repeated the process. Appellant then voluntarily spoke to Investigator Kelly and offered to take him to the location where she found the fence panels.

Deville testified that when Appellant brought the fence panels to Centex, she showed her ID and gave her name and address. Deville testified further that Appellant was a regular customer, like many others, who made a living by

12

responding to calls from Centex and Scrap and Metal to collect abandoned materials and bring them for recycling. After Appellant dropped off the fence panels on November 18, 2014, she returned several times to turn in materials for recycling, even after the Sheriff's Department contacted Centex about Rodriguez's claim of stolen fence panels. Deville stated that Appellant is "still a valued customer."

When Investigator Kelly spoke with Appellant, she told Kelly that she sold fence panels to Centex and volunteered to take Kelly to the location where she found the panels. Appellant told Kelly that she thought the fence panels had been abandoned and that she scraps metal for a living. Once there, Appellant voluntarily showed Kelly where on the property she found the fence panels and again explained she thought they were abandoned. On cross-examination, Kelly acknowledged that Appellant was very cooperative when he spoke to her and that she readily admitted she obtained the fence panels but thought they were abandoned.

In support of Appellant's belief that the fence panels were abandoned, the testimony elicited at trial was that there was no mailbox at the vacant lot where the fence panels were located. In addition, there was no sign that the property belonged to Rodriguez or anyone else. Kelly acknowledged further that it

appeared the lot where Appellant obtained the fence panels was vacant. Officer Davis testified that the address he was dispatched to was "not really a neighborhood," but "lots" which ranged in size from half of an acre to five acres. Rodriguez acknowledged that he did not have a "no trespassing" sign on his property and that he does not live on the property. Rodriguez agreed that there was no concrete slab poured or any framework for a home on his property, nor was there a mailbox.

Appellant's words and actions show that she thought the fence panels were abandoned. Why else would she give her ID, name, and address to Deville when she brought the fence panels to Centex? In addition, she waved to a neighbor when loading the panels and returned to what she believed to be a dumpsite when she could not fit all of the panels in her van on the first trip. Appellant was clearly not attempting to conceal her identity or hide her actions. When asked about the panels by law enforcement, she was cooperative and even took Investigator Kelly to the location where she found the panels and told Kelly repeatedly that she believed they were abandoned because the lot where she found them was a dumpsite.

The State failed to prove Appellant had the requisite intent to deprive Rodriguez of his property because her actions and words show she believed the

14

property in question was abandoned. *See King v. State*, 174 S.W.3d 796, 810 (Tex. App.—Corpus Christi 2005), *citing Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981). As such, the State failed to prove an essential element of the offense beyond a reasonable doubt and Appellant's second point of error should be sustained. *Jackson*, 443 U.S. at 320; *Brooks*, 323 S.W.3d at 896.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully prays that this Court reverse the judgment and sentence in this case.

Respectfully submitted,


_____"/s/" Kristen Jernigan_____
KRISTEN JERNIGAN
State Bar Number 90001898
207 S. Austin Ave.
Georgetown, Texas 78626
(512) 904-0123
(512) 931-3650 (fax)
Kristen@txcrimapp.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing Appellant's Brief has been mailed on November 16, 2015, to the Bell County District Attorney's Office, 1201 Huey Road, Belton, Texas 76513.

_____"/s/" Kristen Jernigan_____
Kristen Jernigan

**CERTIFICATE OF WORD COUNT**

The undersigned hereby certifies that the foregoing document consists of 4,464 words in compliance with Texas Rule of Appellate Procedure 9.4.

_____"/s/" Kristen Jernigan_____
Kristen Jernigan